[No. 22055.   Department Two.   December 10, 1929.]

W. W. Mattson *et al., Respondents and Cross-Appellants, v.* Defiance Lumber Company, *Appellant.*[1]

*F. D. Oakley,* for appellant.

*Hugo Metzler* and *J. W. Quick,* for respondents and cross-appellants.

[1]Reported in 282 Pac. 848.

FRENCH, J.—The Defiance Lumber Company owns and operates a large sawmill on the waterfront near the Tacoma smelter in the city of Tacoma. This mill has been in operation for nearly a quarter of a century, and furnishes employment to approximately two hundred people. A little back from the waterfront on which this mill is located is a steep bluff, and near the top of this bluff and about a quarter of a mile from the mill plant of the Defiance Lumber Company, Dr. Mattson some few years ago purchased a tract of land, of approximately three hundred feet square, fronting on a boulevard which runs along the brow of the bluff, tore down the old houses standing thereon and erected a beautiful, substantial and expensive home. A controversy arose between certain of the residents who lived in the immediate vicinity of Dr. Mattson's home and the mill regarding what was denominated as "the smoke nuisance." There were a number of meetings held by the residents of this immediate vicinity, some of the meetings at least being attended by the manager of the Defiance Lumber Company, and it seems to have been agreed that the mill company would do all in its power to eliminate this smoke nuisance.

At that time the company had its sawmill equipped with two smokestacks about one hundred feet high. These stacks were in fair condition and would have probably lasted for two or three years. Certain experts were called in, an investigation was made of the plant, and these stacks were taken down and a new stack one hundred and fifty feet high was built, this new stack being of brick and steel construction. Some sort of appliance was installed at the top of the stack for the purpose of washing the smoke, and this washing appliance was kept in operation for a few months, but it was discovered that no metal could be found which would withstand the acid which came presum-

ably from the particles washed out of the smoke, or from the fumes carried in the smoke itself, and although steel, lead, copper, zinc, and certain other materials prepared by those who were presumably experts in this line were tried, it was necessary to abandon the attempt because nothing could be found which would withstand the action of the acids. As was stated by the witness who had charge, "it could not be made to work".

The washing apparatus was then placed at the bottom of the stack. It is Dr. Mattson's claim that the washing apparatus at the bottom of the stack worked satisfactorily, and it is the claim of the mill company that the water runs down between the brick and steel jacket of the stack and that, inasmuch as this water was saturated with acid and had eaten off the top of the stack, they feared it would eat off the bottom of the stack.

The fire boxes under the boilers of the sawmill were rebuilt, and, according to the testimony of expert witnesses, they are the best and most efficient modern type possible to be installed. To make these changes, the mill company expended many thousands of dollars.

Thereafter Dr. Mattson brought this action, alleging that the mill company permitted to escape from its refuse burner and so carried on its mill operations that cinders, ashes, charred particles of wood, refuse and other matter have been deposited upon his property, and have substantially damaged it, and rendered the home of the plaintiffs less inviting and less comfortable, and destroyed the enjoyment thereof. The complaint was further elaborated by allegations concerning the operation of the burner wherein the waste materials of the mill were destroyed and the pleading of certain ordinances of the city of Tacoma, and certain

damages were then asked, and among other things the prayer for relief asked that "the defendant be enjoined from continuing the operation of its plant in the manner as herein specified and complained of."

The mill company answered generally, denying all the material allegations of the complaint. The matter came on for trial and a jury was called, not as a matter of right, but was permitted by the court to sit in an advisory capacity. The jury also viewed the premises of both parties to the action, and, after hearing a large number of witnesses, answered special interrogatories as follows:

"(1) Has the premises of the plaintiffs been damaged by smoke, soot, ashes, sawdust, shavings and charred wood from the mill of defendant? Ans. No.

"(2) If you answer the above interrogatory in the affirmative, state the amount of such damages? Ans. None.

"(3) Have plaintiffs been deprived of the comfortable use and enjoyment of their premises by reason of the matters or any of them set forth in interrogatory No. 1? Ans. Yes.

"(4) If your answer to the above interrogatory in the affirmative state the amount which you find the plaintiffs have been damaged by reason thereof. Answer. $500."

The trial court then made and entered findings of fact and conclusions of law which read as follows:

"I

"That the Defiance Lumber Company, defendant herein, has for a number of years operated a large saw mill on the waterfront in a northerly direction from the premises of the plaintiffs, and at all times mentioned in the complaint and at the time of the trial said mill was one of the most important industries of the city of Tacoma, employing on an average about 250 workmen. That the said saw mill was constructed and in operation a great many years prior to the time the plaintiffs bought the property and built their residence mentioned in the complaint herein.

## "II

"That the defendant, for the purpose of generating power for operating its plant, burned in its furnace shavings and other refuse from the mill, and also maintained a refuse burner for the purposes of burning surplus shavings and other refuse not used in its furnaces. That only a small quantity of waste material was burned in said refuse burner. That said refuse burner is of the most modern and up-to-date type of burner and is as efficient and practical a type of burner as any known and in use by lumber manufacturing companies; and that little, if any soot, particles of charcoal or unconsumed material from said burner is cast or precipitated upon the premises of plaintiffs. That the furnaces, fire boxes and smokestack, and all other devices used by defendant in its mill operations for the purposes of generating power are as practical, modern, and up-to-date type as shown and in use and possible to be installed in said plant. That defendant expended large sums of money within the last two years in trying new devices to improve its fire boxes and smokestacks and has done all that in the judgment of experts and the court can be done to prevent the escape of soot, or refuse from its smokestacks. That defendant has employed skilled and expert men to operate its mill plant and fire boxes and to maintain its equipment in a high state of efficiency.

## "III

"That the operation of defendant's sawmill is conducted in a much greater state of efficiency in respect to emitting soot and dust and other refuse from its smokestack than it was at the time the plaintiff bought the property upon which they constructed their residence referred to in the complaint herein.

## "IV

"That it is impossible to operate a sawmill without emitting a certain amount of soot, cinders, charred shavings and embers.

## "V

"That plaintiffs have sustained damages to some extent to their property and depreciation thereof in

value, by reason of the proximity of defendant's mill plant to their premises and acts complained of in plaintiff's complaint herein, in the sum of $1,000, but said plaintiffs have suffered no other or greater damages of any other kind or character because of any other matters and things charged in their complaint.

## "VI

"That the court finds that the sawmill plant of the defendant is an important and valuable industry and that the same should not be closed and enjoined from operation by reason of the matter and things above set forth.

"From the above findings of fact, the court makes the following:

## "CONCLUSIONS OF LAW

### "I

"That an injunction should not be allowed as prayed for in plaintiffs' complaint herein, closing and preventing the operation of defendant's sawmill.

### "II

"That the plaintiffs are entitled to recover as damages from defendant the sum of $1,000, and that judgment should be entered in their behalf in that sum against the defendant, and their costs and disbursements to be taxed herein."

Both sides having appealed, the Defiance Lumber Company will be referred to as appellant, and Dr. Mattson and wife will be referred to as respondents.

The appellant's assignments of error all go to the question of the allowance of one thousand dollars damages, it being claimed by appellant, as we understand, that they have installed the most modern, up-to-date equipment possible, and that respondents have suffered no substantial damage from the operation of their plant, and that there can be no recovery for such slight discomfort and inconvenience as the testimony shows the respondents may have suffered in this case.

On the other hand, respondents' contention seems to be that the evidence shows that they have suffered substantial, permanent injury by reason of the depreciated value of their property; by reason of being deprived of the comfortable use and enjoyment thereof; by reason of money expended to overcome the effects of what they denominate "a smoke nuisance," and in addition respondents claim that they are entitled to an injunction to compel the appellant to observe the terms of the city ordinance which they have introduced in evidence, and which they claim the evidence shows appellant is violating.

The rule governing cases of this kind has been well stated in the case of *Bartel v. Ridgefield Lumber Co.*, 131 Wash. 183, 229 Pac. 306, 37 A. L. R. 683, a case practically identical with the instant case, except that it was there admitted that "when the wind is in the right direction smoke, sawdust, embers, soot, etc. are deposited on plaintiff's place and do material damage." Here these facts are disputed, but the law of the case is there stated, namely:

"The rule governing the foregoing and many other cases is not that one may use his own property as he sees fit, so long as he uses it in the usual manner and without negligence, but that one may put his property to any use he sees fit, so long as he does not thereby materially damage someone else or his property, and that negligence is not the sole test of responsibility. *Where a trade or business is carried on in such manner as to materially interfere with the reasonable and comfortable enjoyment by another of his property or which occasions material injury to the property itself, a wrong is done for which an action for damages will lie,* without regard to the locality where such business is carried on and notwithstanding the business be entirely lawful, and notwithstanding the best and most approved appliances and methods may be used in the construction and management of the business.

"It is probable that this rule is, and ought to be, that before an action for damages may be maintained, the injury or inconvenience must be substantial, and that redress may not be had for every slight discomfort or inconvenience. But the testimony here very clearly shows that the appellants' property has been damaged in a substantial manner, and as a direct result of the operation of respondent's mill.

"Unquestionably, most of our cases are in accord with the great weight of authority on this question and we think they should be followed. If one may so operate his lawful enterprise, although without negligence, as to materially injure another without responding in damages, the same principle would justify such extensive injury as would entirely drive such other from his home and property. Such ought not, and cannot, be the law.

"But injunction will not necessarily follow damages. Here the appellants' property is of comparatively small value and importance. That of respondent is of great value. If we hold that respondent must not, under any circumstances, cast sawdust, smoke and cinders on appellants' property, then we, in effect, forever close the mill. This, under the circumstances, we will not do. The manufacture of lumber is the most important business of western Washington, and no unnecessary interference therewith will be permitted. A reading of the cases which we have cited will show that, while we have often allowed damages under similar circumstances, we have seldom granted injunctions. Apparently respondent is solvent and capable of responding in such damages as the appellants may suffer. It is infinitely more equitable, under all the circumstances, to require them to enforce payment of their damages than to force the closing of this manufacturing plant." (Italics ours.)

It must be remembered in the instant case that, after viewing the premises of both parties to the action, the jury found certain facts. After listening to the testimony of all of the witnesses and taking into consideration the findings made by the jury, the court found cer-

tain facts. These facts only are in dispute in this case, excepting on the one question raised on respondents' cross-appeal involving the ordinance of the city of Tacoma.

The ordinance reads as follows:

"An ordinance defining certain places, acts and things to be nuisances; providing for the abatement thereof; providing a penalty for the causing, keeping, maintaining or permitting thereof; and repealing Ordinances Nos. 4439, 4686 and 5647.

"BE IT ORDAINED BY THE CITY OF TACOMA:.

"Section 1. The following places, things and acts are hereby declared to be public nuisances, namely:

. . .

"9. Burning refuse, sawdust, or other material in such a manner as to cause or permit ashes, sawdust, soot, or cinders to be cast upon the streets or alleys of the city of Tacoma, or to cause or permit the smoke, ashes, soot or gases arising from such burning to become annoying to any considerable number of persons, or to injure or endanger the health, comfort or repose of said persons. . . ."

In considering the ordinance in question, it must be considered in its entirety. The court must have in mind the evil which it is sought to correct. We think this clause of the ordinance, in so far as this mill is concerned, has to do with the refuse burner only, and the evil complained of does not come from the refuse burner. We do not think that the ordinance can be said to be at all applicable to the burning of fuel in the mill itself. It certainly can not be argued that railroads can be kept out of the city under the terms of this ordinance, because of the fact that coal-burning locomotives necessarily scatter soot and cinders, and because the smoke from railroad locomotives is generally annoying to those residing in the immediate vicinity of the railroad tracks. No private home in the city could under any circumstances use coal as a fuel,

because at times the coal smoke would be annoying to the immediate neighbors. No manufacturing enterprise of any kind generating its own power by the use of steam would be permitted to operate within the confines of the city, because even oil burners will, at times, when the combustion is poor, produce a vast amount of smoke and soot. We think, rather, that this ordinance is intended to apply to refuse burners as such, garbage incinerators and the like, where the real purpose to be served is to destroy and get rid of waste material.

We can not think that the purpose of the city council was to make a nuisance out of the various industrial plants of the city of Tacoma unless the council says so in more explicit terms.

There is abundant testimony in this case tending to show that a large amount of ashes, cinders, etc., were deposited on respondents' property. There was abundant testimony which would have warranted the jury and the court in believing that the smoke, soot, cinders, etc., came from appellant's mill. There was other reputable testimony in abundance warranting the court and jury in believing that appellant's mill was modern, well constructed, up-to-date, and that every known feasible method had been used to prevent the escape of smoke, soot and cinders, and that, as a matter of fact, practically no smoke, soot and cinders did escape in any perceptible amount or more than to be at times slightly annoying. There is testimony showing that appellants have spent a number of thousands of dollars in attempting to remedy what was apparently a bad condition, and there is testimony of witnesses showing that it is one of the most modern, clean, and up-to-date plants in the northwest, and there is other testimony to the contrary. There is testimony showing that appellant has done everything

possible to eliminate the conditions which existed, and there is testimony which warranted the court in finding that it is impossible to operate a sawmill without emitting a certain amount of soot, smoke, cinders, charred shavings, embers, etc. There is also testimony showing that, in so far as humanly possible, this mill has eliminated the evils complained of. Industries such as this must be permitted to exist. But on the other hand, in accordance with the doctrine laid down in the *Ridgefield Lumber Co.* case, *supra*, where they cause damage, they must pay the damage. We still adhere to the doctrine announced in that case. Certain facts in the instant case have been found by the jury. The findings of fact made by the trial court are generally in harmony with the verdict of the jury. We think the sole question in this case is the amount of damages to be allowed, if any.

We cannot say that the evidence preponderates against the findings of the trial court.

The judgment is affirmed.

MITCHELL, C. J., MAIN, FULLERTON, and HOLCOMB, JJ., concur.