NORTH AMERICAN CEMENT CORPORATION *v.*
MILLARD J. PRICE ET AL.
[No. 81, October Term, 1932.]

*Decided February 16th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Augustine S. Mason* and *Vernon Cook,* with whom was *David C. Winebrenner* on the brief, for the appellant.

*Omer T. Kaylor* and *J. Lloyd Harshman,* with whom was *William M. Storm* on the brief, for the appellees.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from a judgment recovered in the Circuit Court for Frederick County, by Millard J. Price and Lizzie E. Price, the appellees, against the appellant, the North American Cement Corporation.

The appellees are the owners of thirty-three and one-third acres of land in Washington County. Adjoining the land of the appellees on the northeast is the land of the appellant, and on this land the appellant maintains and operates a large manufacturing cement plant.

The declaration contains two counts. In the first it is alleged that in the operation of the defendant's plant large quantities of "disagreeable soot, smoke, dust and other matter" are discharged therefrom upon the plaintiffs' property used for agricultural purposes, thereby rendering "unmarketable and worthless" the produce grown thereon, and as a result thereof the plaintiffs are thereby deprived of the "profits and advantages that would reasonably enure to them from said property, and the value of said property is seriously impaired to their great loss and damage."

In the second count it is alleged that in addition to the discharge upon the plaintiffs' land of large quantities of disagreeable soot, smoke, etc., as alleged in the first count, "much blasting is done in the quarries on defendant's said property," and as a result thereof "there is caused to come upon the plaintiffs' said land a large amount of noise and vibration" which, together with the soot, smoke, and dust, etc., "has thereby taken away from the said plaintiffs the reasonable and comfortable enjoyment of said property as a place of abode to the great damage of the plaintiffs."

In the trial of the case twelve exceptions were taken to the rulings of the court, eleven upon the admission or exclusion of evidence, and one upon the prayers. The plaintiffs offered two prayers, both of which were granted. The defendant offered six prayers. Of these the first, third, fourth, and sixth were granted, while the second and fifth were rejected.

The objections urged by the appellant to the court's rul-

ings upon the prayers are confined to its rulings in rejecting its second and fifth prayers. In the second prayer the court was asked to instruct the jury "that in determining the question as to whether or not the operation of the defendant's plant has materially interfered with the plaintiffs in the reasonable enjoyment of their property they may consider the locality of the two properties, the nature of the business being conducted by the defendant, the useful character of said business and the large investment made therein, that they are not to regard trifling inconveniences to the plaintiffs, and that the plaintiffs cannot insist on extreme rights or recover for every trifling annoyance. The matter must be regarded from a reasonable point of view and the plaintiffs, to justify a recovery, must show actual, substantial and material injuries, otherwise the verdict must be for the defendant."

By the fifth prayer, which contains practically the same proposition of law, the court was asked to instruct the jury that "in determining whether or not the defendant has interfered with the plaintiffs in the reasonable enjoyment of their property, they should consider the locality and all the surrounding circumstances, and if they find that the defendant has erected expensive works which are useful and needful to the public the plaintiffs cannot insist on extreme rights or recover for trifling annoyances, but must show actual, substantial and material injuries."

As stated in *Susquehanna Fertilizer Co. v. Malone,* 73 Md. 276, 20 A. 900: "No principle is better settled than that where a trade or business is carried on in such a manner as to interfere with the reasonable and comfortable enjoyment by another of his property, or which occasions material injury to the property itself, a wrong is done to the neighboring owner, for which an action will lie; and this, too, without regard to the locality where such business is carried on; and this, too, although the business may be a lawful business, and one useful to the public, and although the best and most approved appliances and methods may be used in the conduct and management of the business. *Attorney-Gen. v.*

*Lunatic Asylum,* L. R. 4 Ch. 147; *Pinckney v. Ewens,* 4 Law T. (N. S.) 741; *Water Works Co. v. Potter,* 7 Hurl. & N. 160; *Rylands v. Fletcher,* L. R. 3 H. L. 330."

It was also said in *Susquehanna Fertilizer Co. v. Malone, supra*: "We fully agree that, in actions of this kind, the law does not regard trifling inconveniences; that everything must be looked at from a reasonable point of view; that in determining the question of nuisance in such cases, the locality and all the surrounding circumstances should be taken into consideration; and that where expensive works have been erected and carried on, which are useful and needful to the public, persons must not stand on extreme rights, and bring actions in respect of every trifling annoyance, otherwise, business could not be carried on in such places. But still, if the result of the trade or business thus carried on is such as to interfere with the physical comfort, by another, of his property, or such as to occasion substantial injury to the property itself, there is wrong to the neighboring owner for which an action will lie. *Smelting Co. v. Tipping,* 11 H. L. Cas. 642." This language is very similar to that embodied in the defendant's prayers in this case, which we have hereinbefore set out in full.

In the later case of *Susquehanna Fertilizer Co. v. Spangler,* 86 Md. 570, 39 A. 270, 272, where the defendant in the *Malone* case was again sued to recover for injury and damage to the property of the plaintiffs, and the discomfort and annoyance to them caused by the obnoxious and unwholesome vapors and smoke, etc., from the defendant factory, the court, quoting from Lord Romilly in *Crump v. Lambert,* L. R. 3 Equity Cases, 409, said: "The law on this subject is, I apprehend, the same whether it be enforced by action at law or bill in equity. * * * There is, I apprehend, no distinction between any of the cases, whether it be smoke, smell, noise, vapors, or water, or any gas or fluid. The owner of one tenement cannot cause or permit to pass over or flow into his neighbor's tenement any one or more of these things in such a way as materially to interfere with the ordinary comfort of the occupier of the neighboring tenement, or so

as to injure his property.' * * * 'The real question in all the cases is the question of fact, viz., whether the annoyance is such as materially to interfere with the ordinary comfort of human existence.' "

In the case just quoted from, a prayer very similar to defendant's prayer in this case was offered and rejected by the court. That prayer was as follows: "The jury are instructed that, before the plaintiffs can recover under the pleadings in this case, they must believe that the fumes and gas from the factory of the defendant have occasioned substantial injury to the house owned by the plaintiffs jointly, *and in determining this question the jury are instructed that they should take into consideration the locality and all the surrounding circumstances; and that, when expensive works have been constructed, which are needful and useful to the public,* if they so find, that persons must not stand on extreme rights, and bring actions with respect to every trifling annoyance, but must submit to the reasonable consequences of the carrying on of trades in this immediate neighborhood, which are actually necessary to trade and commerce; and in considering the question of damage to the property of the plaintiffs the jury are instructed that the plaintiffs cannot recover for any injury they might have prevented by ordinary effort and care."

In connection with its ruling upon the above prayer, the court said: "We have considered at a length which is perhaps unnecessary the reasons and authorities, on which the opinion of this court is founded on questions of the character presented in this case. We have done so, because we perceived from the argument that the principle was very important to the appellant in this case. We have not meant, however, to imply any dissatisfaction with the decision in *Malone's* case, 73 Md. 268, 20 A. 900, in which this same fertilizer company was appellant. That decision was approved in *Euler v. Sullivan,* 75 Md. 616, 23 A. 845, and we have no doubt of its correctness. In the opinion it was said: 'So we take the law to be well settled that in actions of this kind the question whether the place where the

trade or business is carried on is a proper and convenient place for the purpose, or whether the use by the defendant of his own land is, under the circumstances, a reasonable use, are questions which ought not to be submitted to the finding of the jury.' In the rejected prayer on the part of the defendant it was proposed to instruct the jury, in *determining the question of substantial injury to the plaintiff's house, that they should take into consideration the locality and surrounding circumstances,* and other matters which appear in the prayer. * * * The jury are not told what exculpatory inference they would be at liberty to draw from these matters after they had taken them into consideration. But they were to consider them in determining whether the injury was substantial or not. Manifestly, none of them could have any tendency to show whether the injury to the house was great or small." The court then stated the evidence tending to show substantial injury to the property and proceeds to say: "This evidence, if believed by the jury, would justify them in finding substantial injury to the rights of the plaintiffs without any regard whatever to the locality. It is not in any manner countervailed or weakened by any of the matters suggested for the consideration of the jury in the rejected prayer. The proper question for the jury was whether the operation of the factory interfered with the reasonable and comfortable enjoyment by the plaintiffs of their property, or occasioned material injury to the property itself. The finding of these facts depended on the evidence applicable to them, and not on locality or any other matter embraced in the rejected prayer."

The reasoning of the court upon which it based its rulings on the prayer in that case is controlling in this case. The evidence on the part of the defendant in this case is in conflict with the evidence offered by the plaintiffs, but still, assuming the facts testified to by plaintiff's witnesses as to the injury to their property to be true, and this was a question for the jury, a substantial and actionable injury was done to the plaintiffs for which they were entitled to recover. It is contended by the defendant that, inasmuch as the jury

were told that the plaintiffs were entitled to the reasonable enjoyment of their property in the prayer granted the plaintiffs, they should also have been told the legal way to determine what is and what is not reasonable; and that to determine such fact they should consider the facts named in the prayer, to wit, the locality of the two properties, the nature of the business being conducted by the defendant, the useful character of said business, and the large investment made therein.

The consideration of these facts would not, we think, aid the jury in determining whether the operation of the factory interfered with the reasonable and comfortable enjoyment by the plaintiffs of their property, or occasioned material injury to the property itself. There was evidence tending to show that the plaintiffs suffered substantial injury by the operation of the factory, and that they were interfered with in the reasonable and comfortable enjoyment of their property. Whether they suffered substantial injury or were interfered with in the reasonable and comfortable enjoyment of their property depended on evidence applicable thereto, and not on locality or the other facts mentioned in the prayer, which furnish no aid in establishing the extent of injury, nor do they enlighten the jury as to what was meant by reasonable and comfortable enjoyment of the property by the plaintiffs.

In our opinion, these prayers were properly rejected.

The appellant in his brief did not refer to exceptions one, three, and four, and these exceptions will be treated as abandoned.

The second exception is to the refusal of the court to permit the plaintiff Millard J. Price to be asked whether he knew at the time of the purchase of his property that the cement plant was in its present location. The fifth exception is to the refusal of the court to permit a witness for the defendant to be asked: "Will you tell us what is the cost of the improvements you have made subsequent to this schoolhouse meeting (a meeting at which the representatives of the appellant met with farmers of that community in relation to injuries said to have been suffered by the latter as a result of

the operation of the factory), including the original dust chamber and stack and finally the Cottrell system?"

In *Susquehanna Fertilizer Co. v. Malone, supra,* the contention was made that, as there was a fertilizer factory on the land several years before the plaintiffs built their house, the plaintiffs have no right to complain, because they "came to the nuisance." Judge Robinson, speaking for the court in that case, said this was no defense to the action. "If the appellant had acquired a prescriptive right, that is to say, a user of the place for twenty years, that would present a different question. But no such right is claimed in this case; and, that being so, the appellant had no right to erect works which would be a nuisance to the adjoining land owned by the plaintiff, and thus measurably control the uses to which the plaintiff's land may in the future be subject. It could not, by the use of its own land, deprive the plaintiff of the lawful use of his property." Citing *Bliss v. Hall,* 4 Bing. N. C. 183; *Elliotson v. Feetham,* 2 Bing. N. C. 134; *Crump v. Lambert, supra; Tipping v. Smelting Co.,* L. R. 1 Ch. App. 66.

With this statement of the law, we discover no error in the court's ruling on the second exception.

The question raised by the fifth exception was likewise discussed in *Susquehanna Fertilizer Co. v. Malone, supra,* where it is said: "No one has a right to erect works which are a nuisance to a neighboring owner, and then say he has expended large sums of money in the erection of his works, while the neighboring property is comparatively of little value. The neighboring owner is entitled to the reasonable and comfortable enjoyment of his property, and, if his rights in this respect are invaded, he is entitled to the protection of the law, let the consequences be what they may." And we find no error in the court's ruling on this exception.

The remaining exceptions, six, seven, eight, nine, ten and eleven, were to the refusal of the court to permit evidence tending to show the value of cement dust for spraying fruits and vegetables, and as a fertilizer. This evidence, as stated by the defendant, was not offered in recoupment of the injury

or damage done the plaintiffs. This, the defendant conceded, it had no right to do. But it was offered to show the "characteristics and qualities of the dust and the effect it might reasonably be expected to have on fruits and vegetables."

It was not claimed by the plaintiffs that the dust was poisonous or that it, in its nature, was deleterious to growing crops, if applied at the proper time and in proper quantities. But the injuries complained of were due to the constant falling of this dust upon the land and premises of the plaintiffs. It fell upon the roof of their home and was washed therefrom by the rain through the spouts into the cistern, where the water was rendered unfit to be used for certain purposes. It fell continuously upon the growing vegetables, and, when rained upon, a coating, somewhat in the nature of cement, formed upon the surface of the plant or vegetable, which, if removable at all, was only removable with much difficulty, resulting in damage thereto and rendering the product less marketable. It fell upon the apples, filling the space around the stem and, when rained upon, a substance in the nature of cement formed around the stem. In addition thereto, the surface of the apple would be affected thereby, rendering the apple more or less unsalable. The fact that the dust could be used beneficially for spraying purposes when properly applied would have no effect upon the conditions complained of. They would remain the same.

This evidence therefore, we think, was properly excluded. We find no errors in the rulings of the trial court, and the judgment will be affirmed.

*Judgment affirmed, with costs.*