[No. 28369.   *En Banc.*   October 1, 1942.]

GUY POWELL, *Respondent,* v. SUPERIOR PORTLAND
CEMENT, INC., *Appellant.*[1]

*Welts & Welts* and *Little & Leader,* for appellant.

*Ward & Barclay,* for respondent.

'Reported in 129 P. (2d) 536.

MILLARD, J.—This action was brought to enjoin defendant from interfering with plaintiff's use and enjoyment of his premises and to recover damages for injury caused to plaintiff's premises by dust from defendant's plant at Concrete, Washington. The cause was tried to the court, which found that a substantial quantity of dust was blown from defendant's plant upon plaintiff's property in such quantity as to subject plaintiff to substantial inconvenience and discomfort; and that, as a result of the deposit of dust from defendant's plant upon the property of plaintiff, the latter was damaged in the amount of five hundred dollars. Plaintiff was denied the equitable relief for which he prayed, but judgment was entered awarding him five hundred dollars for damages he had sustained. Defendant appealed.

Respondent, who has resided in Concrete since 1907, acquired by purchase in 1934 the property which is involved in this action. That property consists of two lots of an aggregate area of six thousand square feet improved with a six-room house and garage thereon, situated two and one-half city blocks northeast of the cement plant of appellant. The premises were occupied by respondent as his residence until August, 1938, when he removed therefrom and let same partially furnished.

Appellant's cement plant, which is located within the town of Concrete, commenced the manufacture of Portland cement in June, 1908. Prior to the location of the cement plant therein, Concrete was a small community with a few logging camps and shingle mills. Many families moved to Concrete when the cement plant commenced operation; in fact, at least half of the residents of the town are directly dependent upon appellant's plant for their livelihood. Prior to the establishment of the plant, there were practically no

homes in Concrete. The school population has increased since the commencement of the operation of appellant's plant from forty students to more than three hundred at the present time.

An examination of the record before us clearly discloses that the continuance of Concrete as a town of any appreciable size is dependent upon the operation of the plant, which employs about two hundred men. The main reason for the location of appellant's cement plant, which is a permanent one, in Concrete, is the proximity of huge deposits of limestone. It is estimated that more than two hundred million tons of limestone are within the area at Concrete, and the largest year's operation in thirty years is four hundred thousand tons.

In the process of manufacturing cement, a quantity of dust, consisting of fine limestone rock particles in various steps of burning, escapes from appellant's plant and is carried by the air currents and precipitated upon the surrounding territory. The dust, a certain portion of which escapes from the stacks, is created in the revolving cylinders of the kilns and is driven by forced draft into the stacks attached to the kilns. At this time, appellant operates six kilns, each having its own stack.

The escape of the dust from the stacks is not caused by any neglect on the part of appellant. The trial court stated that the preponderance of the evidence was that appellant has eliminated all possibility of the escape of dust from portions of its plant other than from the stacks, and has greatly reduced the amount of dust escaping from the stacks.

It appears that the installation of dust-catching machinery, designated as the Cottrell system, would eliminate substantially all the stack dust, but the cost of the installation of that system would be prohibitive

and would necessitate the entire reconstruction of appellant's plant. It further appears that such installation and reconstruction of the plant would limit the use of the plant to the better grade of its limestone deposits, whereas its present method of manufacture utilizes the entire deposit as it is found at Concrete.

Counsel for appellant contend that, as respondent purchased property in a manufacturing community, he is not entitled to compensation because of dust inseparable from industrial activity in that community.

In *Hardin v. Olympic Portland Cement Co.*, 89 Wash. 320, 154 Pac. 450, we held that plaintiff was entitled to recover for damages to his property from particles of cement carried by the prevailing winds from defendant's plant over and upon plaintiff's premises. In that case, the record discloses that defendant was not engaged in manufacturing and selling cement in Whatcom county until nine years after plaintiff had continuously owned and farmed the land affected. We held the defendant was liable, although there was no showing of negligence in the manner of the operation of defendant's plant, on the theory that no one has a right to pursue a lawful business, if thereby he injures his neighbor, without compensating that neighbor for the damages actually sustained.

In *Bartel v. Ridgefield Lbr. Co.*, 131 Wash. 183, 229 Pac. 306, 37 A. L. R. 683, we followed *Hardin v. Olympic Portland Cement Co., supra,* and held that it is no defense to an action, like the case at bar, that a defendant is conducting its business in substantially the same manner, with substantially the same effect upon plaintiff's property, long before plaintiff acquired that property and lived thereon. As sustaining authority, we cited *Brede v. Minnesota Crushed Stone*, 143 Minn. 374, 173 N. W. 805, 6 A. L. R. 1092, in which the supreme court of Minnesota held that the fact that some of the

plaintiffs acquired their property after defendant began to operate its quarry was of no particular importance.

It is true that the position of respondent is amply supported by precedent authority; however, the presence or absence of precedent should not determine the question presented in the case at bar. While due deference should be paid to precedent, the question in determining whether to accept or reject the precedent is how far it accords with good sense or reason; that is, the law should not be confined to precedents, but consists in the reason of them, as "the reason of the law is the soul of the law."

Respondent, who has resided in Concrete thirty-five years, did not acquire until 1934 the property which is involved in this action. He purchased the property with knowledge of conditions. That the right of action, if any, respondent's grantor may have had for damages to that property prior to 1934 did not pass to respondent grantee with conveyance of the property, needs no citation of sustaining authority.

Appellant has practically made the community. It has invested a great deal of money in construction of its plant and has made provision for the maintenance of a necessary industry for many years to come. It has done everything that can be reasonably expected of it to reduce to a minimum the discomforts that are inseparable from such industrial activity. To require appellant to respond in damages for its continuance, is a step toward destruction of appellant's business. Respondent knew that living in the surroundings herein described necessarily entailed some discomfort. That burden he assumed when he acquired his property in a community the character of which had been established for many years.

It would serve no useful purpose to review the numerous cases from our own and other jurisdictions.

The courts are not in accord on the question presented. Any opinion of this court which holds, or from which it may be inferred, that one who voluntarily purchases property in a manufacturing community may be compensated because of smoke, gases, dust, or noise, inseparable from industrial activity in that community and reasonably necessary or expectable in the conduct of lawful industrial operations therein, is hereby overruled. The effect of a contrary holding would be to destroy or prohibit the continuance of an established and otherwise lawful business.

In the past, we have not hesitated to reexamine our opinions and overrule same. We adopt the rule enunciated in the logical opinion in *Ebur v. Alloy Metal Wire Co.*, 304 Pa. 177, 155 Atl. 280. In that case, which in principle is indistinguishable from the case at bar, the court said:

"The courts have found it difficult to lay down any precise and inflexible rule by the application of which it can be determined that a plaintiff in a given case is entitled to relief by injunction against smoke, fumes and noises emitted in the vicinity of his residence. It has been said that a 'fair test as to whether a business lawful in itself, or a particular use of property, constitutes a nuisance, is the reasonableness or unreasonableness of conducting the business or making the use of the property complained of in the particular locality and in the manner and under the circumstances of the case': 46 C. J. 655. It has also been said: 'Whether the use is reasonable generally depends upon many and varied facts. No hard and fast rule controls the subject. A use that would be reasonable under one set of facts might be unreasonable under another. What is reasonable is sometimes·a question of law, and at other times, a question of fact. No one particular fact is conclusive, but the inference is to be drawn from all the facts proved whether the controlling fact exists that the use is unreasonable': 46 C. J. 656. No word is used more frequently in discussing

cases of this kind than the word 'reasonable,' and no word is less susceptible of exact definition. What is reasonable under one set of circumstances is unreasonable under another. Custom itself has much to do with determining what is reasonable. Noises which in the preindustrial era would have been considered intolerably unreasonable are now tolerated as reasonable. The noise and smoke of railroad trains frequently passing human habitations is not now considered unreasonable, although an equal amount of noise and smoke would doubtless at an earlier time have been considered so. That a certain amount of smoke, fumes, gases and noises will necessarily be produced and emitted by manufacturing plants is inevitable, but that persons who dwell near such plants, like persons who dwell near railroads or on busy city streets, must put up with a certain amount of resulting annoyance and discomfort is self-evident. The prosperity of an industrial community depends on its industrial activities and it would be inconsistent with sound public policy to prohibit these activities at the behest of a comparatively few who are annoyed thereby. Every form of industrial activity has its disagreeable factors. Industries, like individuals, have 'the defects of their qualities.' In mining and manufacturing communities people must expect that their homes will be more difficult to keep clean than if they lived in an agricultural community. A certain amount of noise also is inseparable from industrial activity. The burdens of prosperity must be taken with its benefits."

█ There is no doubt that respondent's property will sell for as much for any use with the plant, alleged to constitute the nuisance, in operation as it would if the operation should cease (in fact, what value the property has is because of the populating of the town by operation of the plant); therefore, no recovery can be had for the claimed reduction of its value for use as a home.

*Ingersoll v. Rousseau*, 35 Wash. 92, 76 Pac. 513, cited by respondent, is not in point. An action to abate, as

a nuisance, houses of prostitution on complaint of one who purchased property in such neighborhood after the commencement of the nuisance, is not comparable to the situation here presented. The maintenance of a house of prostitution can not be anything less than the maintenance of a public nuisance, and no operator of it may ever invoke the doctrine of estoppel or any other defense to abatement of that which is contrary to sound public policy and may not be legalized; immorality of that character may not yet be licensed. Citation of sustaining authority is not necessary.

*Wilcox v. Henry,* 35 Wash. 591, 77 Pac. 1055, is not in point, as the evidence established the fact that the objectionable features of the plant there assailed could be obviated.

The position of respondent that every business located in an industrial section of a city be so conducted as will guarantee to every nearby homeowner the same freedom from discomfort and annoyance as would be afforded to him if he were living in a strictly residential community, is untenable. Such rule would encourage litigation which would unreasonably harass industry and likely bankrupt many industries of this state which it is the policy of the law to protect within reason.

The judgment is reversed and the cause remanded, with direction to dismiss the action.

STEINERT and SIMPSON, JJ., concur.

BLAKE, J. (concurring)—I do not think plaintiff has proved any substantial damage. Certainly, he has shown no damage different in character or degree from that which is sustained by all the other householders in the town.

"The true measure of damages for a nuisance is compensation for the loss or injury sustained, which is usually held to be the depreciation in the market or

usable or rental value of the property, together with such special damages as may be proved." 39 Am. Jur. 395, § 134.

In *Stevens v. Rockport Granite Co.,* 216 Mass. 486, 488, 104 N. E. 371, Ann. Cas. 1915B, 1054, Chief Justice Rugg said:

"The law of nuisance affords no rigid rule to be applied in all instances. It is elastic. It undertakes to require only that which is fair and reasonable under all the circumstances. In a commonwealth like this, which depends for its material prosperity so largely on the continued growth and enlargement of manufacturing of diverse varieties 'extreme rights' cannot be enforced. One who settles in a district, which posseses natural resources of a special kind, cannot prohibit the development of those resources merely because it may interfere in some degree with personal satisfaction or æsthetic enjoyment."

It seems to me that, unless the diminution in "personal satisfaction or æsthetic enjoyment" can be measured in terms of depreciation in the market value or, at the very least, in the rental value of the property, general damages should not be allowed. Otherwise, of necessity, such damages must rest upon pure conjecture. Having failed to prove either, and having failed to establish his claims of special damage, plaintiff is, at most, entitled only to nominal damages. *Watson v. New Milford,* 72 Conn. 561, 45 Atl. 167, 77 Am. St. 345; *Perry v. Howe Co-op. Creamery Co.,* 125 Iowa 415, 101 N. W. 150.

DRIVER, J., concurs with BLAKE, J.

BEALS, J. (concurring)—In the main, I am in accord with the opinion of the majority, and I also agree with the views expressed by Judge Blake.

JEFFERS, J. (dissenting)—I am unable to agree with either the opinion, to which I shall refer as the majority

opinion, or the concurring opinion of Judge Blake, and I am especially opposed to the rule announced in the majority opinion and the overruling of our decisions, for the reason that I feel the conclusion reached in the majority opinion is contrary to the long-established rule in this state, which rule I believe to be supported by reason and the almost universal holdings of all other courts and text writers.

I may say at the outset that I have no fault to find with the rule announced in the majority opinion as applied to injunctive relief, and I may say further at this time that the only case cited in the majority opinion to sustain the rule is *Ebur v. Alloy Metal Wire Co.*, 304 Pa. 177, 155 Atl. 280, a case in which only injunctive relief was asked, or, in other words, it was sought to enjoin the operation of a plant. It was not an action for damages, as is the instant case.

I doubt if it will be possible to find any authority, and certainly no convincing authority, wherein the rule as to damages is different from that announced by this court in the cases to which I shall hereinafter refer, which rule I believe justified the trial court in allowing damages to respondent in this case, under the facts found by the trial court.

The majority opinion contains a correct statement of the facts, so far as it goes, but I feel that there should be added thereto certain facts as found by the court in finding No. 15. This finding is amply supported by the evidence, and the majority opinion does not state otherwise. One of the assignments of error is based upon this finding, which states:

"The court finds from a preponderance of all the evidence that an appreciable and substantial quantity of dust reaches the plaintiff's property from the defendant's plant and that this quantity is sufficient to produce an unpleasant and uncomfortable situation on

the premises during a considerable part of the time. This dust, possessing the characteristics previously described, permeates the house and out-buildings whether the windows and doors are closed or not; it tends to adhere to the surfaces which it reaches if even slightly moistened, because of its propensity for setting or scaling. This commonly occurs upon the sides of the buildings or personal property out of doors, and upon foliage, especially if there is any dew, and tends to change their appearance. It causes these articles to assume a grayish color, rather unnatural and unattractive. It interferes with household affairs, such as the washing and drying of clothes, and increases the frequency with which the house and its contents must be cleaned and dusted. If the wind is in such direction that it is carrying the dust directly from the plant to the plaintiff's property, the amount of dust deposited inside the home is such that by the time the interior of the home is cleaned and dusted, it is ready to be gone over again. The deposit of dust makes painting difficult *and decreases the life of the paint. It damages the roof and shortens the life of the roof.* If removed from the surfaces by the elements or by human labor, it is renewed by further deposits with sufficient frequency so that it may be said that it is usually present in some degree. Although harmless to, it is also noticeable upon the persons of the occupants of the plaintiff's premises, causing an unpleasant sensation of uncleanliness. The evidence establishes the propensity of the dust for thus affecting individuals and *injuring property upon plaintiff's premises.* The court finds that a normal, ordinary individual, such as the plaintiff, is subject to *substantial* inconvenience and discomfort by the repeated and recurring discharges of dust upon the plaintiff's premises by the defendant." (Italics mine.)

The record sustains each and every part of the above finding, and does not sustain appellant's contention that the damage was trivial and of no material consequence. The evidence certainly does not fairly preponderate against this finding, and it cannot and should

not be disturbed. *Tutewiler v. Shannon,* 8 Wn. (2d) 23, 111 P. (2d) 215.

Error is also assigned upon the giving of finding of fact No. 16, wherein the court found:

"That on account of the *discomfort, annoyance, inconvenience, and damage* suffered by the plaintiff as a result of the dust emanating from the defendant's plant during the period of two years prior to the commencement of this action, to the time of trial, the plaintiff has been damaged in the sum of $500.00." (Italics mine.)

I am of the opinion that the facts sustain finding No. 16.

It may be conceded that it is difficult in this kind of a case to calculate, in terms of dollars and cents, and with any degree of precision, the damages which respondent may have suffered on account of personal discomfort, annoyance, and inconvenience caused by this dust condition. Any finding of such an item of general damages must necessarily, to a certain extent, be arbitrary. The court fixed respondent's damages at five hundred dollars, after a consideration of all the facts and circumstances disclosed by the evidence in the case, and on the theory that the damages must be compensating and not punitive. Matters of this kind obviously must rest, to a great extent, in the sound discretion of the trial judge. I am of the opinion that the trial court did not abuse its discretion in this case.

I now desire to discuss our own cases covering situations such as that here presented. In these cases I believe a rule has been announced and followed which justifies the conclusions and judgment of the trial court. Reference will also be made to some outside authority.

In the case of *Hardin v. Olympic Portland Cement Co.,* 89 Wash. 320, 154 Pac. 450, we considered the question of whether or not one who operated a cement

plant must respond in damages to one who alleged and proved that

"In the process of the manufacture and in the handling and disposing of the cement, noxious fumes and gases and particles of cement materials and cement were thrown out from the plant and carried by the prevailing winds in, over, and upon respondents' premises, penetrating the dwelling house and rooms, and injuring and destroying vegetation, and that respondents' premises are no longer desirable, comfortable, or valuable as residence property; that they have been greatly depreciated in value, and that, by reason of the things alleged in the complaint, this depreciation is permanent."

In holding the company liable, although there was no showing of negligence in the manner of the operation of its plant, we stated:

"No one has a right, however, to pursue a lawful business, if thereby he injures his neighbor : . . . without compensating such for the damages actually sustained. . . . In such case, when the injury and damage are established, the measure thereof should be that most beneficial to the injured party, as he is entitled to have the benefit and enjoyment of his property intact."

The rule of liability in this state for cases of this type was clearly stated by this court in *Bartel v. Ridgefield Lbr. Co.*, 131 Wash. 183, 229 Pac. 306, where, after referring to the cases of *Smith v. St. Paul, M. & M. R. Co.*, 39 Wash. 355, 81 Pac. 840; *Farnandis v. Great Northern R. Co.*, 41 Wash. 486, 84 Pac. 18; *Mitchell v. Lea Lbr. Co.*, 43 Wash. 195, 86 Pac. 405; *Woodard v. West Side Mill Co.*, 43 Wash. 308, 86 Pac. 579; *DeKay v. North Yakima & Valley R. Co.*, 71 Wash. 648, 129 Pac. 574, and other cases and authority, and after a careful consideration given to the whole problem, the following rule was announced:

"The rule governing in the foregoing and many other cases is not that one may use his own property as he sees fit, so long as he uses it in the usual manner and without negligence, but that one may put his property to any use he sees fit, so long as he does not thereby materially damage someone else or his property, and that negligence is not the sole test of responsibility. Where a trade or business is carried on in such manner as to materially interfere with the *reasonable and comfortable enjoyment by another of his property* or which occasions material injury to the property itself, a wrong is done for which an action for damages will lie, without regard to the locality where such business is carried on and notwithstanding the business be entirely lawful, and notwithstanding the best and most approved appliances and methods may be used in the construction and management of the business." (Italics mine.)

I am clearly of the opinion that, in the instant case under the rule of the *Bartel* case, *supra,* a wrong has been done for which an action for damages will lie. The trial court found, and, as I have said, such finding is amply supported by the evidence, that respondent, as a normal, ordinary individual, has suffered substantial inconvenience and discomfort by the repeated and recurring discharges of dust upon his premises. This, in my opinion, establishes a basis for appellant's liability.

The rule announced in the *Bartel* case has never been repudiated. Not only has it remained the law of this state, but the rule therein announced has been reaffirmed by subsequent decisions, particularly by *Mattson v. Defiance Lbr. Co.,* 154 Wash. 503, 282 Pac. 848, and *Weller v. Snoqualmie Falls Lbr. Co.,* 155 Wash. 526, 285 Pac. 446.

Appellant seeks to distinguish the instant case from the above cited cases, on the ground that in each of those cases there was shown to have been a material

physical injury to the property, whereas it is contended in the instant case that recovery is sought solely for the interference with respondent's personal comfort and enjoyment of his home disconnected from any injury to the premises as such.

It is not entirely correct to say, as appellant does all through its brief, that there is no showing of any damage to respondent's premises. It is true that in its memorandum opinion the trial court stated that no recovery would be allowed for damage to respondent's freehold interest, because there was no showing of depreciation in its market value for sale or rental purposes. But no finding of fact to this effect was made, and an express finding was made (finding No. 15) that this deposit of dust made painting difficult and decreased the life of paint, that it damaged the roof and shortened the life thereof, and that the evidence established the propensity of the dust for affecting individuals and injuring property upon respondent's premises.

I am not of the opinion, therefore, that the trial court granted recovery based solely upon a consideration of respondent's personal discomfort, annoyance, and inconvenience, without any regard for damage done to his property. Nevertheless I shall assume that appellant's contention is correct, and shall discuss the question raised thereby.

It will be noted that the rule in the *Bartel* case is stated in the alternative:

"Where a trade or business is carried on in such manner as to materially interfere with the reasonable and comfortable enjoyment by another of his property *or* which occasions material injury to the property itself, a wrong is done for which an action for damages will lie." (Italics mine.)

However, in the *Bartel* case the court found that the plaintiff's property had been materially damaged, and therefore the language used in the above quoted rule was broader in scope than necessary for the purpose of that decision. Likewise, in the *Mattson* and *Weller* cases, *supra*, it was found that damage had been done to the properties of the respective plaintiffs. I have discovered no case in this state squarely involving the question of recovery for personal inconvenience dissociated with any injury to property. However, I call attention to Rem. Rev. Stat., § 944 [P. C. § 8232], which provides that an action for damages because of a nuisance "may be brought by any person whose property is injuriously affected *or whose personal enjoyment is lessened by the nuisance.*" (Italics mine.) It would seem that under this statute there is no question but that respondent is entitled to recover for his personal inconvenience and discomfort. No mention is made of the above section in either the majority or concurring opinion.

Furthermore, it seems to be quite firmly established in other jurisdictions that recovery will be permitted in this class of cases for personal discomfort unattended by property depreciation.

The supreme court of the United States, in the case of *Baltimore & Potomac R. Co. v. Fifth Baptist Church,* 108 U. S. 317, 27 L. Ed. 739, 2 S. Ct. 719, in considering this question, stated:

"Mere depreciation of the property was not the only element for consideration. That might, indeed, be entirely disregarded. The plaintiff was entitled to recover because of the inconvenience and discomfort caused to the congregation assembled, thus necessarily tending to destroy the use of the building for the purposes for which it was erected and dedicated. The property might not be depreciated in its salable or market value, if the building had been entirely closed

for those purposes by the noise, smoke, and odors of the defendant shops. It might then, perhaps, have brought in the market as great a price to be used for some other purpose. But, as the court below very properly said to the jury, the congregation had the same right to the comfortable enjoyment of its house for church purposes that a private gentleman has to the comfortable enjoyment of his own house, and it is the discomfort and annoyance in its use for those purposes which is the primary consideration in allowing damages. As with a blow on the face, there may be no arithmetical rule for the estimate of damages. There is, however, an injury, the extent of which the jury may measure."

The following statement of the rule is found in *Judson v. Los Angeles Suburban Gas Co.*, 157 Cal. 168, 106 Pac. 581, 26 L. R. A. (N. S.) 183:

"The fact that respondent proved no damage to the dwelling house or herbage on his land nor to the rental, or vendible value of the property, does not prevent the court from awarding damages. In the very nature of things the amount of detriment sustained is not susceptible of exact pecuniary computation. It is for the court to say what sum of money the plaintiff should receive in view of the discomfort or annoyance to which he has been subjected. (Wood on Nuisances, Secs. 563, 866; *Tuebner v. Cal. St. Ry. Co.*, 66 Cal. 175, [4 Pac. 1162]; *Gavigan v. Atlantic etc. Co.*, 186 Pa. St. 604, [40 Atl. 834]; *Berger v. Minneapolis, etc. Co.*, 60 Minn. 296, [62 N. W. 336]; *Hockaday v. Wortham*, 22 Tex. Civ. App. 419, [54 S. W. 1094])."

See, also, *Oklahoma City v. Tytenicz*, 171 Okla. 519, 43 P. (2d) 747.

It would seem there were both logic and justice in this rule. One whose occupancy of his own dwelling house is rendered uncomfortable suffers in just as real a sense as one whose occupancy is rendered impossible. The difference is one of degree only. Damages are more readily and accurately calculable in the latter

case, but the difficulty of assessing damages in monetary terms in the former case is not a valid reason for denying their existence.

While, as I have stated, the first part of the rule announced in the *Bartel* case may not have been necessary to the decision in that case and the other cases referred to, it was, in my opinion, a correct statement of a legal principle, which was amply supported by authority, and which I believe the cases referred to recognized. I am of the opinion, therefore, that respondent's damage was substantial, and was of a type for which the law gives redress, under the rule announced in the *Bartel* case.

It is no defense to this action that appellant's business was being conducted in substantially the same manner, with substantially the same effect upon respondent's property, long before respondent acquired that property and lived thereon. We stated in the *Bartel* case, *supra:*

"It is said, however, that, when appellants bought their property and moved on to it, the respondent's mill was in operation in substantially the same manner as now, and that they, having come to the nuisance, may not recover. We cannot support this doctrine, nor is it supported by the authorities. In *Brede v. Minnesota Crushed Stone Co., supra,* [143 Minn. 374, 173 N. W. 805, 6 A. L. R. 1092], discussing this question, the court said:

" 'The fact that many of the plaintiffs acquired their property after defendant began to operate its quarry is of no particular importance. But little is now left of the doctrine under which a person coming to a nuisance had no right to complain of it.' "

See, also, *Susquehanna Fertilizer Co. v. Malone,* 73 Md. 268, 20 Atl. 900, 25 Am. St. 595, 9 L. R. A. 737; *North American Cement Corp. v. Price,* 164 Md. 234, 164 Atl. 545.

The *Bartel* case, *supra,* and the other authorities cited, absolutely refuse to recognize the rule upon which the majority opinion is based.

Appellant states that respondent contended in the lower court that the operation of appellant's plant is a public nuisance. Appellant then admits, for the sake of argument only, that such operation constitutes a nuisance, on account of resulting material annoyance and inconvenience to. Powell and the general public, and that to that extent the nuisance is public. Appellant then states that, if this be so, respondent cannot recover, since he has shown no special injury to himself, different from that, if any, suffered by the general public.

I am of the opinion that it is unnecessary to decide whether or not the operation of appellant's cement plant, because of the dust condition resulting therefrom, constitutes a public nuisance, because our statute provides that private persons may maintain civil actions for public nuisances if they are specially injurious to such individual. Rem. Rev. Stat., § 9921 [P. C. § 9131-75]. This seems to be the universally accepted rule, even in the absence of statute. It must therefore be admitted that, even if the operation of appellant's plant constitutes a public nuisance, it is also a private nuisance as to respondent, if he has proved that he has suffered special injury, distinct from any injury which he, as a member of the public, might suffer from the invasion of public rights. I am of the opinion, therefore, that the public nuisance aspect of appellant's operations is entirely irrelevant to the question of respondent's right to recover.

Appellant, in support of its contention, argues that every resident of the town of Concrete is subject to inconvenience and discomfort in the same degree as respondent, and that therefore respondent is not spe-

cially injured. I am unable to follow appellant in this contention. The trial court found, and the evidence amply supports such finding, that, in being denied the comfortable enjoyment of his own home for personal residence purposes, respondent has been damaged in the sum of five hundred dollars. I am clearly of the opinion that the personal discomfort, annoyance, and inconvenience which respondent has suffered in the occupancy of his own premises because of the dust condition prevailing in and about those premises, is certainly an injury peculiar to himself, differing in kind from that suffered by the public generally.

In the case of *Wilcox v. Henry,* 35 Wash. 591, 77 Pac. 1055, an action was brought by a resident in the neigborhood to enjoin the defendant from continuing to operate a slaughter house in such a manner as to emit noxious odors therefrom, to the injury of plaintiff and other residents of the neighborhood. The court, after holding that the defendant's operations constituted a public nuisance, upheld plaintiff's right to injunctive relief, against practically the same argument as that made by appellant in the instant case. In the cited case, it appeared that the residents generally in the neighborhood of this slaughter house suffered from the offensive odors which were permitted to emanate from it. Nevertheless we held that, to the extent which the nuisance infringed upon the plaintiff's right to the comfortable enjoyment of his own premises, it caused him special injury from which he was entitled to relief. The distinction between the public and the private character of a nuisance is illustrated in the cited case, by a quotation appearing therein from Wood, Nuisances (3d ed.), § 669:

" 'By common injury is meant an injury of the same kind and character, and such as naturally and neces-

sarily arises from a given cause, but not necessarily similar in degree, or equal in amount. If the injury is the same in kind to all, it is a common injury, although one may actually be injured or damaged more than another. To illustrate, we will take the case of a slaughter house erected upon a public street. To all who come within the sphere of its operation or effects, it is a nuisance, and offends the senses by its noxious smells. It is a common nuisance in such locality, and in its general effects produces a common injury. But to those living upon the street and within its immediate sphere, it is both a common and a private nuisance. Common in its general effects, but private in its special effects upon those living there. To the public generally it produces no injury except such as is common to all; but to those owning property in its neighborhood, or residing there, it produces a special injury, in that it detracts from the enjoyment of their habitations, produces intolerable physical discomforts, and diminishes the value of their premises for the purposes to which they have been devoted.' "

The same author, in § 671, further states:

"So, too, in the case of a noxious trade upon a highway, but away from habitations, so long as every person sustains a common injury only therefrom as by being annoyed by its offensive and unwholesome smells, it is a purely public injury; but if its effects extend to the dwellings or places of business of any persons to such an extent as to render their occupancy materially uncomfortable, then it becomes a private nuisance to those whose dwellings or places of business are so affected, and they may have their action therefor, although there are many persons who are thus affected, and the result will be to promote a multitude of suits."

I am of the opinion that the citation last above set out constitutes the rule in this state, and is contrary to the conclusion reached in the concurring opinion.

While appellant has raised two questions not discussed by the majority or concurring opinion, it does

not appear necessary to discuss those questions in this opinion, in view of the grounds upon which the majority and concurring opinions are based. However, I may say that I am not in accord with the contention of appellant that the action is barred by the statute of limitations. I think this question is settled contrary to appellant's contention by the case of *Weller v. Snoqualmie Falls Lbr. Co.*, 155 Wash. 526, 285 Pac. 446. Neither can I agree that the court erred in entering judgment for costs in favor of respondent.

For the reasons herein assigned, I am of the opinion that the judgment of the trial court is right and should be affirmed.