[No. 36976.   Department Two.   June 4, 1964.]

FREDERICK JONES, *Respondent*, v. O. L. RUMFORD *et al.,*
*Appellants.**

*Neil P. Cronin* and *Edward John Crowley, Jr.,* for appellants.

*Robert E. Anderson,* for respondent.

RUMMEL, J.†—The plaintiff, respondent here, brought this action to enjoin the defendants from operating a chicken

---

*Reported in 392 P. (2d) 808.

†Judge Rummel is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

breeding plant, and for damages for alleged depreciation in value of his property, for impairment of the use of his property, and for invasion of his privacy. He contended that the defendants' breeding plant constituted a nuisance because of the existence of offensive odors, flies, insects and rodents, all caused by the plant.

The trial court ruled that the plaintiff was not entitled to a jury as a matter of right because of the equitable aspects of the case, but called a jury in an advisory capacity to which was submitted the question of damages. This jury returned a verdict for the plaintiff of $500 "for invasion of privacy and impairment of use; and nothing (no dollars) for the physical impairment of their property." Thereupon the court made findings that odors were emitted from the breeding plant during the 2-year period prior to November 8, 1961, the 2-year statute of limitations having been applied, and further that because of the odors, which were offensive to the plaintiff, the plaintiff was unable to properly enjoy his property in a normal manner and his privacy and the use of his property had been impaired. The court awarded $500 damages, as found by the jury, but denied other damages. It further found that the defendants had invested approximately $50,000 in their plant, and had used all modern techniques to control the odor but had been unable to do so. The findings further stated that considering the rights of the respective parties, the defendants should not be restrained from continuing the operation of their business and that the plaintiff is left to his recourse at law in the event that the nuisance recurs, and that plaintiff's rights can be protected by the awarding of damages for any recurring nuisance or impairment of use of the plaintiff's property.

The chicken breeding plant is located near Spokane in a suburban area which has been platted into acre tracts. The defendants' property fronts on a street, where it has a width of 100 feet and a depth of 410 feet. Their residence occupies the front of their acre. The entire chicken raising operation is confined to a large building 89 feet wide and 154 feet long, the front of which is 130 feet from the street.

There are two rooms on the ground floor and a breeder room on the second floor. The outside walls are aluminum on the weather side and exterior plywood on the inside. The floor is concrete and includes two dropping pits which run the length of the building. These were cleaned once in 1960 and twice in 1961. Only half of the building was completed prior to 1960, and then accommodated about 2,250 birds. Increased to its present size in 1960, the building normally houses 5,000 birds, with occasional overlaps when young birds are brought in, so the total may reach 7,000 chickens. The necessary fans for the forced air system were not installed until 1960. These exhaust through four stacks in the roof, the tops of which are 22 to 24 feet above the ground level.

The plaintiff has his home on a 2-acre plot next door to the chicken plant. The walls of the plant are 4 feet from his line. Prior to the building of this plant, both parties signed a petition which caused the area to be zoned to permit agricultural pursuits, including poultry raising.

■ It is the contention of the defendants, now appellants, that because their operation is in an area zoned for agriculture they should not be liable for damages unless they operate their plant in an unreasonable manner. They assert that in any case the plaintiff is estopped to complain, for the reason that he stood by without objection while defendants invested a very substantial sum in the construction of their plant. However, this latter contention is eliminated because of the positive testimony of the plaintiff that the defendant assured him before the building was constructed "that you would never know a chicken coop was there." If believed by the court, such a representation by the defendant would eliminate his contention that the plaintiff is now estopped.

In connection with the question of nuisance, defendants argue that what is permitted by law cannot be a nuisance per se. They cite *Hardin v. Olympic Portland Cement Co.,* 89 Wash. 320, 154 Pac. 450 (1916), which contains this language, p. 325:

"... a lawful business is never a nuisance *per se,*

but may become a nuisance by reason of extraneous circumstances, such *as being located in an inappropriate place, or conducted or kept in an improper manner.* . . .

"No one has a right, however, to pursue a lawful business, if thereby he injures his neighbor (*except such injuries as the public must suffer in common in order to permit lawful enterprises to operate*), without compensating such for the damages actually sustained. . . ." (Italics ours.)

The defendants further quote from *Bruskland v. Oak Theater, Inc.,* 42 Wn. (2d) 346, 254 P. (2d) 1035 (1953), as follows, p. 350:

" . . . The rule of law deducible from the statute and these cases is that, when proper authority authorizes the operation of a lawful business in a certain area, such business does not constitute a nuisance in a legal sense, but it may become such *if it is conducted in such an unreasonable manner* that it substantially annoys the comfort or repose of others or essentially interferes with the enjoyment of property in violation of RCW 7.48.010 and 7.48.120. . . ." (Italics ours.)

■ Defendants contend that if the area was zoned for agriculture, and if the trial court found that they had used all modern techniques to control the odor but had been unable to do so, they could not have been maintaining a nuisance. These points of argument, however, fail to take into account the principle of law that, even if a person conducts a plant in the best manner which is practicable with a sound operation, he may still be using his property in an unreasonable manner. Not only is this conception of nuisance recognized in the excerpts quoted by the defendants, but it is amplified in *Riblet v. Spokane-Portland Cement Co.,* 41 Wn. (2d) 249, 248 P. (2d) 380 (1952), where it is said, p. 254:

"Our basic point of inquiry relates to the general theory of the law of nuisance. This appears primarily to be based upon generally accepted ideas of right, equity, and justice. The thought is inherent that not even a fee simple owner has a totality of rights in and with respect to his real property. In so far as the law of nuisance is concerned, rights as to the usage of land are relative. The general legal principle to be inferred from court action in nuisance cases is

that one landowner will not be permitted to use his land so unreasonably as to interfere unreasonably with another landowner's use and enjoyment of his land.

"The crux of the matter appears to be reasonableness. Admittedly, the term is a flexible one. It has many shades and varieties of meaning. In a nuisance case, the fundamental inquiry always appears to be whether the use of certain land can be considered as reasonable in relation to all the facts and surrounding circumstances.

"Application of the doctrine of nuisance requires a balancing of rights, interests, and convenience. . . ."

*Morin v. Johnson,* 49 Wn. (2d) 275, 300 P. (2d) 569 (1956), prefaces its citing of the foregoing quotation from the *Riblet* case by stating, p. 280:

"The precise degree of discomfort that must be produced to constitute a lawful business a nuisance cannot be definitely stated. The fundamental inquiry in cases of this kind is whether the use to which the property is put is reasonable or unreasonable. *Ebur v. Alloy Metal Wire Co.,* 304 Pa. 177, 155 Atl. 280; *Crawford v. Central Steam Laundry,* 78 Wash. 355, 139 Pac. 56; *Powell v. Superior Portland Cement Co.,* 15 Wn. (2d) 14, 129 P. (2d) 536; *Riblet v. Spokane-Portland Cement Co.,* 41 Wn. (2d) 249, 248 P. (2d) 380."

An aerial photograph of the neighborhood, entered as an exhibit, reveals that the building of the defendants looms up as a much larger structure than the houses and outbuildings on the lands of the surrounding neighbors. The character of the neighborhood is not that of a typical farming community, but rather that of a residential area so common on the fringes of cities, neighborhoods where the residents are not primarily engaged in farming but rather are supplementing their incomes from other occupations by raising vegetables and a few chickens or farm animals.

In addition to the testimony of himself and his wife, the plaintiff presented 12 neighbors as witnesses, all of whom testified to an almost unbearable situation regarding odors and flies. The location of each of their properties is noted on a rough sketch of the neighborhood, and reveals that the properties of these witnesses constituted almost a solid ring around and adjacent to the property of the defendants.

This testimony was of very substantial character and volume.

The 2-year period covered by the case included the summer seasons of 1960 and 1961. Certain additional facts should be noted. The ventilation system was not completed until the building was enlarged in 1960. The defendants did not cease to use an old disposal pit for dead chickens until a new steel one with a tight lid was installed in 1961, and even then the old pit continued to exist. In about March, 1962, the defendant, instead of using lime in the dropping pits, commenced to use a chemical which he testified improved the odor by eliminating the ammonia and the moisture. Although he removed the droppings twice in 1961, he had removed them only once in 1960. He constructed a wall in 1961 on part of his line adjacent to the home of the plaintiff. Thus, although the court at the time of the trial may have found that he had been operating his plant in the best way, obviously there were many changes which had taken place. Whether the court, in assessing damages of $500, was of the opinion that the nuisance existed prior to the changes or continued to the time of trial we cannot say, but the record adequately supports the amount of damages awarded.

■ Nor can we say at this time whether on another trial for subsequent damages the defendants would be concluded as to the fact of nuisance, as was the situation in *Riblet v. Ideal Cement Co.*, 54 Wn. (2d) 779, 345 P. (2d) 173 (1959), where it was held that the rule of estoppel by judgment applied. Such estoppel depends on whether there had been a major factual change, which determination would be made at such subsequent trial.

■ There having been substantial evidence submitted to the trial court and under the rule pronounced in *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn. (2d) 570, 343 P. (2d) 183 (1959), this court should not disturb the trial court's judgment. This case has been followed in numerous appeals, and states the established rule of this court that

the findings of the trial court will not be disturbed if there is substantial evidence to support them.

The judgment is affirmed.

OTT, C. J., DONWORTH, WEAVER, and HAMILTON, JJ., concur.