954 P.2d 877 (1998)
135 Wash.2d 1
Frank TIEGS, d/b/a Greenridge Farms; Fred Olberding and Allen Olberding, d/b/a LC Farms; and James Smith, Respondents,
v.
Donald R. WATTS, d/b/a Don Watts Farms; and Boise Cascade Corporation; et al., Petitioners.
No. 64675-9.
Supreme Court of Washington, En Banc.
Argued June 24, 1997.
Decided April 23, 1998.
*879 Davis, Wright & Tremaine, Richard W. Elliott, Cassandra L. Kinkead, Bellevue, Stephen M. Rummage, Seattle, for Petitioners.
R. Crane Bergdahl, Pasco, Leavy, Schultz & Davis, John G. Schultz, George Fearing, Kennewick, Respondents.
Jodi C. Walker, Stephen H. Overstreet, Olympia, Amicus Curiae on behalf of Building Industry Association.
Preston, Thorgrimson et al., Ross A. MacFarlane, Lori A. Terry, Thomas H. Wolfendale, Seattle, Amicus Curiae on behalf of Northwest Pulp and Paper Association.
Marten & Brown Lip, Gillis E. Reavis, Beverlee E. Silva, Seattle, Amicus Curiae on behalf of Association of Washington Business.
Robert G. Beaumier Jr., Assistant City Attorney, Spokane, Amicus Curiae on behalf of City of Spokane.
Christine Gregoire, Attorney General, Ronald L. Lavigne Jr., Assistant Attorney General, Olympia, Amicus Curiae on behalf of Department of Ecology.
*878 SMITH, Justice.
Petitioners Donald R. Watts and Boise Cascade Corporation seek review of a decision of the Court of Appeals, Division III, which affirmed a verdict and judgment in the Benton County Superior Court finding Petitioners liable for breach of a farm lease and for creating a nuisance by contaminating well water used for commercial farming. We granted review. We affirm.

QUESTIONS PRESENTED
The questions presented in this case are (1) whether the trial court properly instructed the jury that any discharge of contaminants or pollutants into Washington's waters is a nuisance per se in violation of the Washington Water Pollution Control Act without a determination by the Department of Ecology that a violation has been committed; (2) whether the Court of Appeals erred in using a part performance theory to enforce an unacknowledged farm lease; and (3) whether Respondents may recover lost future profits for breach of a farm lease option.

STATEMENT OF FACTS
Petitioner Boise Cascade Corporation (Boise Cascade) owns and operates the Wallula paper and pulp mill in Wallula, Walla Walla County. It holds a National Pollutant Discharge Elimnation System Permit initially issued by the Washington State Department of Ecology in 1972.[1] The permit, which has been periodically renewed, establishes the discharge limits of the mill into the Columbia River.[2] The mill is located between the east shore of the Columbia River and Highways 12 and 395.[3] It uses large volumes of water from the Columbia River in the papermaking and bleaching process.[4] Wastewater is routed to a treatment facility adjacent to the mill where the solids are removed. The remaining wastewater is sent to an unlined pool in an artificial lagoon where aeration and bacterial action are used to reduce the papermaking chemicals and pollutants to permitted levels.[5] The treated water is discharged downstream into the Columbia River.[6]
*880 The Burlington Northern Railroad owned the property across the road from the Wallula mill on the west side of Highways 12 and 395. Petitioner Boise Cascade in 1967 leased that property from Burlington Northern for 20 years. Boise Cascade had considered using the leased property for alternative wastewater treatment projects, but did nothing to accomplish it.[7] The land remained unused for 20 years.
Petitioner Donald R. Watts has been farming potatoes commercially in the Franklin County and Walla Walla areas since 1978.[8] When the Burlington Northern/Boise Cascade lease expired in 1987, Petitioner Watts leased 650 acres of the property from the Glacier Park Company, a successor to Burlington Northern.[9] He developed two irrigation crop circles on the property. He drilled a well into the aquifer adjacent to the Columbia River to set up an irrigation system for the two crop circles.[10] He planted crop Circle 1 in potatoes and leased the second circle to Respondent James Smith.[11] Respondent Smith is a commercial potato farmer. He planted potatoes in Circle 2 and used water from the well. Petitioner and Respondent were satisfied with the potato crop yields from the circles in 1988.[12] Potatoes were not grown in 1989 because they are only planted every other year.[13] Petitioner Watts grew wheat and corn on the property in the crop year 1989.[14] He bought the 650 acre property from the Glacier Park Company on December 18, 1989.[15]
In the fall of 1989, Petitioner Watts met and had a discussion with Respondents Fred and Allen Olberding and Frank Tiegs concerning their developing and leasing seven irrigation circles on the property for the 1990 potato crop year.[16] Respondent Frank Tiegs has been a commercial potato farmer since 1977[17] and Respondents Fred and Allen Olberdings have been commercial potato farmers since 1982.[18] Petitioner Watts developed irrigation Circles 3 through 9 and drilled four new wells on the property to supply water to the new circles.[19] The seven circles had never been farmed for potatoes and were considered "virgin" ground. Virgin ground always yields a higher than normal potato harvest because the ground does not have any established potato diseases or fungus.
On November 28, 1989, Respondents Fred and Allen Olberding leased irrigation Circles 3 through 9 from Petitioner Watts under a "farm lease" contract for the crop year 1990.[20] The contract had a clause providing that the lease was contingent upon Petitioner Watts finding and supplying adequate water flow at a rate of 7.5 gallons per minute to Circles 3 through 9. The contract also granted Respondents Fred and Allen Olberding an option to lease Circles 3 thorough 9 for the crop year 1992.
Respondent Smith exercised his 1988 option to lease Circles 1 and 2 for the 1990 crop year.[21] His farm lease did not contain a promise to deliver water:
In April 1990, Respondents Fred and Allen Olberding and Frank Tiegs planted Russet Burbank potatoes on Circles 3 through 9 and Respondent Smith planted Russet Burbank *881 potatoes on Circle 1 and Nortokah potatoes on Circle 2.
In June 1990, Respondents noticed potato foliage abnormalities. They brought in several consultants who visited the fields on various occasions. The consultants observed that the potato foliage abnormalities occurred from circle to circle. They concluded plant growth regulating herbicides were involved. Respondents engaged the services of a plant pathologist, Dr. William T. Cobb, Ph.D.[22] Dr. Cobb visited the fields several times and took water samples.[23] He concluded the plants exhibited typical symptoms of exposure to plant growth regulating herbicides.[24] The analyzed water samples did not show traces of herbicides, but did show unusual levels of chlorides and total organic halides or TOX.[25] TOX are indicators of chemical compounds that do not occur in nature.[26] Dr. Cobb concluded the well water was contaminated, causing the potato foliage abnormalities.[27] The potato crops were harvested in October 1990. Respondents had expected to harvest 42.5 tons of potatoes per acre, but harvested only 31 tons per acre.[28]
In late 1990 Petitioner Boise Cascade met with Respondents Fred and Allen Olberding and Frank Tiegs to discuss the 1990 crop damage and an estimate of anticipated crop damage for 1992.[29]
On November 26, 1990, Petitioner Boise Cascade purchased the property from Petitioner Donald R. Watts.[30] Boise Cascade agreed to assume any liability Petitioner Watts might have under the farm leases on the property.[31]
On January 11, 1991, Respondents Fred and Allen Olberding and Frank Tiegs filed an action against Petitioners Donald R. Watts and Boise Cascade in the Benton County Superior Court. They claimed Petitioner Watts breached his contract by not providing an adequate well and water system free of contaminants and pollutants.[32] Respondent Frank Tiegs claimed the reduction in the potato crop yield, quality and tonnage was caused by the contaminated well water.[33] Respondents Olberdings and Tiegs claimed Petitioners breached the contract by not allowing them to exercise their option to lease the property for the 1992 crop year.[34] They claimed Petitioner Boise Cascade violated the Water Pollution Control Act, RCW 90.48, the Water Resources Act of 1971, RCW 90.54, and water quality standards for groundwaters.[35]
On August 16, 1991, Respondents Fred and Allen Olberding and Frank Tiegs sent a letter to Petitioner Boise Cascade advising that they wanted to exercise the November 28, 1988 contract option to lease Circles 3 through 9 for the crop year 1992 payable on or before January 20, 1992.[36] Petitioner Boise Cascade had not expected them to exercise their option because Respondents earlier in January 1991 sued Boise Cascade for purportedly contaminating the irrigation water which thy claimed had led to loss of their option.[37] On September 18, 1991, Petitioner Boise Cascade sent a written notice to Respondents terminating the option.[38] Respondents did not farm the property in 1992.
*882 On March 19, 1992, Respondent James Smith intervened in the case, contending that Petitioner Donald R. Watts had breached his contract by not providing an adequate well and water system free of contaminants and pollutants, and that Petitioner Boise Cascade had violated water quality standards for groundwaters.[39]
The case was tried before a jury in February and March 1994 in the Benton County Superior Court. The trial court, the Honorable Fred R. Staples, instructed the jury on a nuisance per se theory over Petitioners' objections. Instruction 12 quoted in its entirety the statutory definition of nuisance in RCW 7.48.120:
Nuisance defined. Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal or basin, or any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property.[[40]]
Instruction 16, quoting a portion of the Water Pollution Control Act, RCW 90.48.080, advised the jury a violation of the statute prohibiting discharge of polluting matters in water constitutes a nuisance:
It shall be unlawful for any person to throw, drain, run, or otherwise discharge into any of the waters of this state, or to cause, permit or suffer to be thrown, run, drained, allowed to seep or otherwise discharged into such waters any organic or inorganic matter that shall cause or tend to cause pollution of such waters.
The instruction, however omitted the remaining words of the statute which read "according to the determination of the department, as provided for in this chapter."
Instruction 14 quoted in its entirety the statutory definition of "pollution" in RCW 90.48.020:
Whenever the word "pollution" is used in this chapter, it shall be construed to mean such contamination, or other alteration of the physical, chemical or biological properties, of any waters of the state, including changes in temperature, taste, color, turbidity, or odor of the waters, or such discharge of any liquid, gaseous, solid, radioactive, or other substances into any waters of the state as will or is likely to create a nuisance or render such waters harmful, detrimental or injurious to the public health, safety or welfare, or to domestic, commercial, industrial, agricultural, recreational, or other legitimate beneficial uses, or to livestock, wild animals, birds, fish or other aquatic life.[[41]]
Instruction 13 quoted the relevant portion of RCW 90.48.010 which declared the policy of the Water Pollution Control Act:
It is declared to be the public policy of the state of Washington to maintain the highest possible standards to insure the purity of all waters of the state consistent with public health and public enjoyment thereof, the propagation and protection of wild life, birds, game, fish and other aquatic life, and the industrial development of the state, and to that end require the use of all known available and reasonable methods by industries and others to prevent and control the pollution of the waters of the state of Washington. Consistent with this policy, the state of Washington will exercise its powers, as fully and as effectively as possible, to retain and secure high quality for all waters of the state.[[42]]
After deliberation, the jury found Petitioner Boise Cascade liable for creating a nuisance and Petitioner Watts liable for breach of the lease by not providing an adequate amount of water. The jury awarded $878,069.00 to Respondent Tiegs and Respondents Olberdings and $563,467.00 to Respondent Smith. The jury also found Petitioner Boise *883 Cascade liable for breach of the 1992 option and awarded Respondents Tiegs and Olberdings $1,147,258.00 in lost profits.[43] On April 13, 1994, Judge Staples entered judgment on the verdict.[44]
On May 11, 1994, Petitioners sought review of the Superior Court decision in the Court of Appeals, Division III. They contended that (1) the trial court did not properly instruct the jury on the law of nuisance and the Water Pollution Control Act, RCW 90.48, because Petitioner's wastewater treatment system was constructed under a discharge permit which met requirements of the Department of Ecology and did not constitute a nuisance per se; (2) the trial court erred when it denied their motion for directed verdict on the action for damages from loss of the 1992 lease option because the lease was not acknowledged and thus was void under the statute of frauds; and (3) the trial court erred when it calculated lost future profits as damages for breach of the 1992 lease option.
On September 5, 1996, the Court of Appeals, Acting Chief Judge John A. Schultheis writing,[45] concluded that (1) discharges approved and authorized by the Department of Ecology do not constitute a nuisance per se, but the jury was properly instructed it could find a nuisance if Petitioner Boise Cascade leached pollutants into the groundwater in violation of the Water Pollution Control Act, RCW 90.48; (2) the trial court properly submitted to the jury the claim for loss of the 1992 option inasmuch as Petitioners expected Respondents would renew the 1992 lease option because of the consideration paid by Respondents; (3) it is logical the parties would cancel the lease if the only available water was contaminated and because Petitioners had a duty to supply uncontaminated irrigation water; and (4) lost future profits are an appropriate measure of damages for breach of a farm lease if damages can be established with reasonable certainty.
On October 22, 1996, Petitioners sought review by this court of the decision of the Court of Appeals. We granted review on April 1, 1997.

DISCUSSION
Petitioner Boise Cascade contends the trial court gratuitously created a nuisance per se standard out of an amalgam of statutory provisions to inform the jury that any discharge of pollutants or contaminants into state waters is unlawful and constitutes an actionable nuisance, arguing that a reading of RCW 90.48.080 shows that not every discharge of contaminants is unlawful and such discharges may be allowed when they comply with requirements of the Washington Department of Ecology. Boise Cascade also argues it thus cannot be held liable for creating a nuisance because it holds a valid discharge permit and the Department of Ecology has not made a determination that leakage from its wastewater treatment facility is unlawful.
A nuisance per se is an act, thing, omission, or use of property which of itself is a nuisance, and hence is not permissible or excusable under any circumstance.[46] A lawful business is never a nuisance per se, but may become a nuisance by reason of circumstances.[47] A person who conducts a business or a plant lawfully and in the best manner practicable with a sound operation may still commit a nuisance if the operation interferes unreasonably with other persons' use and enjoyment of their property.[48] An actionable nuisance must either injure the property or unreasonably interfere with enjoyment of the *884 property.[49] No one has a right to pursue even a lawful business if that person injures a neighbor without compensating the neighbor for the damages sustained.[50]
Some nuisance actions in this state are specifically provided by statute.[51] RCW 7.48.010 defines actionable nuisance for which damages and other relief are available. A common law right of action to recover damages for wrongful water pollution is well established in Washington.[52] The Water Pollution Control Act contains no express declaration against recognition of such rights of action. The language of the Act does not require or necessarily imply abolition of the common law right of action.[53]
It is clear from federal and state statutory schemes and Washington Department of Ecology regulations that discharge of contaminants or pollutants into state waters is prohibited unless authorized by a permit. A permit is required regardless of the water quality standard.[54] When a permit has been granted, discharge of contaminants or pollutants must comply with its conditions.[55] Discharges in violation of permit requirements constitute a nuisance which subjects violators to damages.[56] A business operation does not at the outset constitute a nuisance when it is authorized by proper authority, but the operation may constitute a nuisance if it is conducted in a manner which unreasonably interferes with the use and enjoyment of another's property in violation of RCW 7.48.010 and .120.[57] The fact a governmental authority tolerates a nuisance is not a defense if the nuisance injures adjoining property.[58] Mere violation of permit requirements may not be the proximate cause of injuries, but the actual discharge of contaminants or pollutants may be the proximate cause of the damage to another's property.[59]
The question whether a business created a nuisance and caused damage to crops on adjacent property is one for the jury.[60] The jury has discretion to determine the extent of the nuisance and the compensation to the injured party for it.[61] The Court of Appeals correctly determined the jury instructions given in this case were proper.
Petitioner Boise Cascade contends the trial court erred when it denied its motion for directed verdict because the lease was not acknowledged and thus was void under the statute of frauds, allowing the jury to enforce the option contract based upon the instruction on estoppel. Boise Cascade also argues the Court of Appeals erred when it affirmed the option verdict based upon the theory of part performance.
We have recognized as enforceable leases ones that do not fully comply with *885 statutory requisites when under the facts it would be inequitable for the challenging parties to assert invalidity of their own agreements.[62] An instrument may be taken out of operation of the statute of frauds by a form of equitable estoppel based upon the notion it would be inequitable for the challenging party to assert invalidity of the instrument to which that party agreed.[63] An unacknowledged lease, which is to some extent a parol contract concerning real estate, must be proven by clear and convincing evidence.[64] A lease prepared by the lessor should be interpreted in favor of the lessee.[[65]] Leases have been sustained where the lessee had performed acts called for in the lease in reliance upon it, giving rise to estoppel or part performance.[66] The facts must show the parties acted upon the instrument as a lease.[67]
Petitioners contend the lease in this case was not acknowledged. A lease need not necessarily be acknowledged if the lessee pays the rent and takes possession.[68] RCW 59.04.010 provides that "[l]eases may be in writing or print, or partly in writing and partly in print, and shall be legal and valid for any term or period not exceeding one year, without acknowledgment, witnesses or seals."
Petitioner Watts testified he recognized the farm lease and his signature.[69] He did not deny either. The parties entered into the farm lease with the intent Respondents would use the land for the 1990 crop year with the option to lease for the 1992 crop year. Respondents took possession of the land, prepared it and planted and maintained the potato crop. Petitioner Watts visited the property checking and maintaining the water pumps.[70] The parties conducted their business according to the terms of the lease. The Court of Appeals correctly determined the farm lease was valid and enforceable.
Petitioner Boise Cascade contends the Court of Appeals erred in affirming lost future profits as the appropriate measure of damages for breach of the lease option for the 1992 crop year. It argues the Court of Appeals should not make new law by affirming lost profit damages for a crop Respondents never planted. Petitioner argues that since no Washington case has considered the question whether lost profits could be recovered for crops not planted, the court should follow the 1901 case of Engstrom v. Merriam[71] in which the measure of damages was determined to be the rental value of the land and not the value of the hoped for crop.
The modern view is that lost profits are properly recoverable as damages when (1) they are within the contemplation of the parties at the time the contract was entered, (2) they are the proximate result of defendant's breach, and (3) they are proven with reasonable certainty.[72]
*886 At least since 1919, this court has articulated the rules on lost profits as a measure of damages:
The first rule poses no problem, for it was clearly foreseeable that if the contract was breached there would be lost profits on national sales. Most contracts are motivated by the expectation of future profits. If such profits are within the contemplation of the parties at the time the contract is made, they may form the measure of damage.[[73]]
The second rule requires certainly as to the fact that damage resulted from defendant's breach.[[74]]
The third rule requires that lost profits must be proven with reasonable certainty or conversely, damages which are remote and speculative cannot be recovered.[[75]]
The amount of lost profits must be established with reasonable certainty.[76] Lost profits cannot be recovered where they are speculative, uncertain and conjectural.[77] Lost profits will not be denied where factual data is presented as a basis for computing probable losses.[78] The usual method for proving lost profits is to establish profit history.[79] Respondents Tiegs and Olberdings are experienced commercial potato farmers. Their testimony and exhibits provided a reasonably certain basis upon which the jury could use lost future profits as the measure of damages.

SUMMARY AND CONCLUSIONS
One who operates under a discharge contaminant or pollutant permit issued by the Washington Department of Ecology is not necessarily absolved of liability for damages under a nuisance per se theory if the discharge injures another's property. The question whether an authorized discharge of contaminants or pollutants caused damage to crops on adjacent land is one for the jury.
The challenging party may not assert invalidit of an unacknowledged farm lease when there are facts showing both parties had performed acts called for in the lease in the belief it was valid. Indeed, under RCW 59.04.010 acknowledgment is not required for a lease which may be performed within one year. Lost future profits are an appropriate measure of damages for breach of a farm lease when the amounts can be established with reasonable certainty.
We affirm the decision of the Court of Appeals, Division III, which affirmed a verdict and judgment against Petitioners finding them liable for breach of a farm lease and for creating a nuisance by polluting or contaminating well water used for commercial farming on an adjacent property.
DOLLIVER, GUY, and JOHNSON, JJ., concur.
MADSEN, Justice (concurring).
While I concur in the ultimate disposition of the case, I write separately to emphasize the trial court's error in not giving the complete text of RCW 90.48.080 in its instructions to the jury.
At trial, the court instructed the jury on a nuisance per se theory over defendant's objections. The court then quoted a portion of the Water Pollution Control Act, RCW 90.48.080, and advised the jury that a violation *887 of the statute constituted a nuisance. The court instructed the jury as follows:
It shall be unlawful for any person to throw, drain, run, or otherwise discharge into any of the waters of this state, or to cause, permit or suffer to be thrown, run, drained, allowed to seep or otherwise discharged into such waters any organic or inorganic matter that shall cause or tend to cause pollution of such waters....
RCW 90.48.080 (emphasis added.) The instruction, however, omitted the remaining portion of the statute which read "according to the determination of the department as provided for in this chapter." RCW 90.48.080.
Boise argues that the omitted language requires an affirmative departmental finding that Boise was in violation of the Act. However, the language of the statute and the decisions of this court do not support such an analysis. See Miotke v. City of Spokane, 101 Wash.2d 307, 678 P.2d 803 (1984). Instead, the language indicates that whether a party is in violation of RCW 90.48.080 is to be determined by departmental rules and regulations promulgated pursuant to the Act. Although the plaintiff must show that the facility was operating in violation of the law, that plaintiff need not also show that the Department of Ecology (DOE) has intervened in the matter.
In 1972, Congress passed the Federal Water Pollution Control Act (FWPCA) Amendments governing the discharge of pollutants into navigable waters. 33 U.S.C. § 1131 (1976). The stated goal of the FWPCA is to "`eliminate the discharge of pollutants into the Nation's waters by 1985 ... through the enforcement of the strict timetables and technology-based effluent limitations established by the Act.'" Miotke, 101 Wash.2d at 322, 678 P.2d 803 (quoting Natural Resources Defense Council, Inc. v. Costle, 568 F.2d 1369, 1371 (D.C.Cir.1977)). The FWPCA sets forth a permit program, the National Pollutant Discharge Elimination System (NPDES), as the primary means of enforcing the Act's effluent limitations. Id. at 323, 678 P.2d 803. Congress made it clear that any discharge without or in violation of the conditions or limitations of such a water permit is unlawful.
There are innumerable references in the legislative history to the effect that the Act is founded on the "basic premise that a discharge of pollutants without a permit is unlawful and that discharges not in compliance with the limitations and conditions for a permit are unlawful."
Id. at 324, 678 P.2d 803 (quoting Natural Resources Defense Council, 568 F.2d at 1374-75).
The FWPCA includes a procedure whereby each state may assume the administration of the waste permit program, and Washington assumed control of the administration of permits within its jurisdiction in 1972. 33 U.S.C. § 1342(b). The duty of administering the program is imposed upon the Department of Ecology. The powers of the DOE in administering the program are enumerated in RCW 90.48.260, which provides, in part:
The department of ecology is hereby designated as the State Water Pollution Control Agency for all purposes of the federal clean water act as [amended] and is hereby authorized to participate fully in the programs of the act as well as to take all action necessary to secure to the state the benefits and to meet the requirements of that act.... The powers granted herein include, among others, and notwithstanding any other provisions of chapter 90.48 RCW or otherwise, the following:
(1) Complete authority to establish and administer a comprehensive state point source waste discharge or pollution discharge elimination permit program.... Program elements authorized herein may include, but are not limited to: (a) Effluent treatment and limitation requirements together with timing requirements related thereto; (b) applicable receiving water quality standards requirements....
Pursuant to RCW 90.48, the DOE has established an elaborate process governing the application of water permits to discharge pollutants into the surface or groundwater of this state. WAC 173-220. The Department has also promulgated water quality standards for the state's surface and groundwater. WAC 173-200, 201A. The rules make it *888 clear that the waste discharge permits are the crucial regulatory devise to achieve and maintain the water quality standards set forth in WAC 173-200 and 201A. See WAC 173-201A-020; WAC 173-201A-100(1). Thus, it is unlawful to discharge any pollutant into the waters of this state without a water permit or to violate the conditions or limitations set forth in a water permit. See RCW 90.48.142, .160.
Thus, the sentence left out of the jury instructions, "according to the determination of the department, as provided for in this chapter," speaks to any violation of the rules and regulations promulgated pursuant to the Water Pollution Control Act, which necessarily includes discharging wastes without or in violation of a water permit. RCW 90.48.080.
The danger in not including the last portion of the statute is that it did not require the plaintiff to prove that Boise operated its facility in violation of the statutes and regulations governing the Water Pollution Control Act. See Adcox v. Children's Orthopedic Hosp. & Med. Ctr., 123 Wash.2d 15, 36, 864 P.2d 921 (1993) (jury instructions should accurately inform the jury of the applicable law). The instruction states that it is a violation of the Act and, therefore, a nuisance per se if the plaintiff discharged or seeped into the waters of this state any pollutant. However, without the remaining language this is not an accurate statement of the law. For example, a business may discharge pollutants into the waters of this state but will not be in violation of the Act if the business has a water permit allowing for the particular discharge. By omitting the last sentence, "according to the determination of the department," the trial court has misstated the law and created a situation whereby the plaintiff could be found liable for nuisance per se without establishing that the plaintiff has operated its business in violation of the law. RCW 90.48.080.
It is undisputed that a lawful business is never a nuisance per se. State ex rel. Bradford v. Stubblefield, 36 Wash.2d 664, 670, 220 P.2d 305, 17 A.L.R.2d 1258 (1950). Only when a business has operated in violation of law is a nuisance per se established. Id.
A nuisance per se, by definition, means an act, thing, omission, or use which "is not permissible or excusable under any circumstances,"and hence has never been lawful.
Id. at 671, 220 P.2d 305. Although a lawful business is not a nuisance per se, it may become a nuisance in fact if operated is such an unreasonable manner that it materially interferes with the reasonable and comfortable enjoyment by another of his property. Bruskland v. Oak Theater, Inc., 42 Wash.2d 346, 350-51, 254 P.2d 1035 (1953); see also Parker v. Ashford, 661 So.2d 213 (Ala.1995). By omitting the last sentence of RCW 90.48.080, the trial court has erroneously reduced the plaintiff's burden of proof in this matter, allowing the plaintiff to possibly claim under a nuisance per se theory without establishing that an actual violation has occurred. In the absence of a nuisance per se a nuisance in fact may be established, however, the jury in this case was not instructed regarding nuisance in fact.
Although the court erred, its error was harmless in this case, as it is readily apparent from the record that Boise was in violation of the Act. "`Harmless error is error which is trivial, formal, or academic.'" Adcox, 123 Wash.2d at 36, 864 P.2d 921 (quoting State v. Ray, 116 Wash.2d 531, 543, 806 P.2d 1220 (1991)). As Justice Talmadge points out, Boise Cascade did not have a permit to leek pollutants into the groundwaters of this State. Although Boise had a point source permit to emit certain pollutants into the Columbia River, their permit did not authorize a discharge from any other source, including the one at issue here. Thus, Boise polluted the state's waters without a permit, and was therefore in violation of the Act.
Moreover, Boise Cascade operated its facility in violation of its water permit, which regulates its discharges into the Columbia River. Boise Cascade's water permit specifically states that the facility "shall not allow leachate from solid waste material to enter state ground or surface waters without providing all known, available and reasonable treatment, nor allow such leachate to cause any adverse effect on state ground or surface waters." Ex. 337, at 20 IV B. The evidence *889 in this case shows that Boise Cascade was leaching pollutants from its facility without proper treatment in violation of its water permit. Thus, not only was the defendant's facility discharging pollutants without a permit but it was also leaching pollutants into the groundwater of this state in violation of its permit. Both actions constitute a violation of the Act. Thus, any instructional error in this case was harmless. For these reasons, I respectfully concur.
DURHAM, C.J., and ALEXANDER, J., concur.
TALMADGE, Justice (concurring).
While I agree with the majority's disposition of this case generally and its resolution of the statute of frauds and damages issues specifically, I write separately to emphasize my views regarding nuisance.
Boise Cascade Corporation (Boise Cascade) indicated in oral argument it was not relying on the so-called permit shield defense.[1] Boise Cascade instead now argues the trial court's instruction 16 was erroneous because Boise Cascade's wastewater system was constructed to meet the Department of Ecology's (DOE) requirements for the National Pollutant Discharge Elimination System (NPDES) permit and therefore cannot violate RCW 90.48.080 so as to constitute a nuisance per se. Boise Cascade argues the trial court should have given its proposed instruction 40 which would have allowed the jury to consider all conduct in determining whether or not Boise Cascade's behavior was reasonable and therefore a nuisance. In effect, Boise Cascade argues for something in the nature of a "reasonable polluter" standard for nuisance.
Boise Cascade's position is neither supported in the law nor in the facts of this case. In Miotke v. City of Spokane, 101 Wash.2d 307, 678 P.2d 803 (1984), we held owners of certain waterfront property stated a claim for nuisance per se against the City of Spokane and DOE for discharging raw sewage into the Spokane River, affecting their property. We rejected the defendants' contention that the decision to discharge the raw sewage was the result of a carefully reasoned choice among available alternatives, holding: "[u]nfortunately, no matter how reasonable their decision might have been ..., defendants were not authorized to make it. They had no alternative under federal and state law but to comply with the waste discharge permit." Miotke, 101 Wash.2d at 329-30, 678 P.2d 803.
In Miotke, the discharge of raw sewage into the Spokane River violated a waste disposal permit which had been granted to the City by DOE during the City's construction of a new sewage treatment facility. DOE issued an NPDES permit to the City for discharge of sewage into the Spokane River. DOE actually authorized the discharge of raw sewage into the Spokane River in violation of the NPDES permit it had issued to the City. We, nevertheless, held the downstream property owners stated a cause of action for nuisance per se under such circumstances. Even with the specific approval of the wrongful discharge of sewage in violation of RCW 90.48 by the governmental regulatory agency, we found nuisance per se:
The DOE, in authorizing the bypass without requiring a new permit, also violated the permit provisions of RCW 90.48. Nowhere in that statute is there any indication *890 that the requirement of a waste disposal permit may be avoided by means of a modification of water quality standards.
Miotke, 101 Wash.2d at 328, 678 P.2d 803. It is similarly nuisance per se in this case for Boise Cascade to permit leaching from its treatment ponds, regardless of DOE's conduct. The trial court did not err in instructing the jury pursuant to instruction 16 under RCW 90.48.020.[2]
Additionally, under the facts of this case, Boise Cascade's argument is misplaced. An NPDES permit allowed Boise Cascade to discharge pollutants into the Columbia River. Boise Cascade argues it impliedly had the authority to allow more than 100,000 gallons per day of pollutants to enter the groundwater from its aeration ponds because the aeration ponds were part of the system for which an NPDES permit was granted. The language of the NPDES permit is clear, authorizing Boise's discharge of pollutants "at the location described," defining the "Discharge Location" as "River Mile 316" and the "Receiving Water" as "[the] Columbia River." See Ex. 337 (Waste Discharge Permit) at page 1. There is nothing in the NPDES permit authorizing Boise Cascade to pollute the groundwater in the area near its aeration ponds to the extent of 100,000 gallons per day. Indeed, the actual language of the NPDES permit here contradicts Boise Cascade's contention. The permit mandates that Boise Cascade prevent the entry of all solid waste material into the groundwaters of the state and further notes:
The permittee shall not allow leachate from solid waste material to enter state ground or surface waters without providing all known, available and reasonable treatment, nor allow such leachate to cause any adverse effect on state ground or surface waters.
Ex. 337, § S.3(IV)(B), at 20(emphasis added). Boise Cascade cannot transform its NPDES permit, allowing pollutants into surface waters, into a generalized permit to pollute the groundwater or any and all other waters in the vicinity of its treatment facilities.
The trial court correctly instructed the jury in instruction 16 regarding nuisance per se. Boise Cascade cannot transform an NPDES permit into a generalized license to pollute any surface waters and groundwaters arguably associated with its enterprise. Nor do we recognize a "reasonable polluter" defense to pollution of Washington's environmental heritage. Under Miotke, even with a government agency's tacit or implicit blessing, a polluter's damage to the property interest of others is actionable as nuisance per se.
SANDERS, Justice (dissenting).
The first, and most important, issue raised in this appeal is set forth in the Petition for Review of Boise Cascade Corporation and Don Watts:
Did the trial court's instructions misstate the law by using the Washington Water Pollution Control Act to create a nuisance per se rule, where none exists under the statute, which effectively made a finding of liability for nuisance against Boise Cascade inevitable?
Br. of Appellants Donald R. Watts, d/b/a Don Watts Farms; and Boise Cascade Corp. at 3. The gravamen of the assigned error focuses upon trial court Instruction No. 16, Clerk's Papers (CP) at 120, which specifically defines "nuisance" for the purpose of the second element to be proved under Instruction No. 7.
Instruction No. 7, in its entirety, provides:
As to plaintiffs' claim concerning the quality of irrigation water during the 1990 crop year, the plaintiffs have the burden of proving each of the following propositions:

*891 First, that Boise Cascade contaminated the wells used to irrigate plaintiffs' 1990 potato crop;
Second, that such contamination by Boise Cascade constituted a nuisance under the laws of the state of Washington;
Third, that the plaintiffs were injured;
Fourth, that the conduct of Boise Cascade was a proximate cause of the injury to the plaintiffs; and
Fifth, the amount of damages proximately caused by such conduct.
CP at 113(emphasis added).
Instruction No. 16 provides as follows:
You are instructed that the laws of the state of Washington provide as follows:
It shall be unlawful for any person to throw, drain, run, or otherwise discharge into any of the waters of this state, or to cause, permit or suffer to be thrown, run, drained, allowed to seep or otherwise discharge into such waters any organic or inorganic matter that shall cause or tend to cause pollution of such waters....
A violation of this statute constitues [sic] a nuisance.
CP at 120 (emphasis added).
The problem with these instructions, says Boise Cascade, is that Instruction No. 16 misstates the statutory reference by deleting the critical language which follows "such waters" in RCW 90.48.080:
according to the determination of the department, as provided for in this chapter.
It is the claim of Boise Cascade, a claim which permits no denial, that the trial court simply read the quoted phrase out of the statute for the purpose of instructing the jury.
To this claim of error the majority responds only in the most general fashion, if at all. However, Justice Madsen recognizes the error in her concurring opinion, yet refuses to correct it, claiming it is but harmless. However, "the use of an erroneous instruction is presumptively prejudicial and is considered harmless error only when the record affirmatively establishes that the manner in which the instruction was worded could have no effect on the outcome...." State v. Crane, 116 Wash.2d 315, 331, 804 P.2d 10 (emphasis added), cert. denied, 501 U.S. 1237, 111 S.Ct. 2867, 115 L.Ed.2d 1033 (1991).
If the jury followed the literal language of Instruction No. 16, which we must assume it did,[1] the jurors would necessarily be compelled to conclude Boise created a nuisance if it discharged but a thimble-full of leachate into the ground or surface waters of the stateregardless of whether or not the effluent was previously treated by "all known available and reasonable methods" (RCW 90.48.010), regardless of whether the discharge was authorized by permit, and regardless of whether or not the Department of Ecology had "determin[ed]" (RCW 90.48.080) the discharge caused or tended to cause pollution. As each of these factors is relevant to determine whether or not the Boise Cascade operation fell within the negligence per se category, the trial court's refusal to instruct the jury on these elements of plaintiffs' proof was erroneous and constituted a gross violation of Boise's legal rights.

RCW 90.48 Regulates, But Does Not Eliminate, Pollution
While some might advocate the return to an antediluvian hunter-gatherer society, where there is no industrial pollution whatsoever, that obviously was not the "[p]olicy enunciated" in RCW 90.48.010, which attempts to reconcile the dual objectives of water purity with "industrial development of the state." "[T]o that end," the Legislature does "require the use of all known available and reasonable methods by industries and others to prevent and control the pollution of the waters of the state of Washington," which, by necessary implication, means that methodology which is not known, not available, or unreasonable is not required. To accomplish this legislative objective the state granted jurisdiction to the Department of Ecology "to control and prevent the pollution" *892 of the state's waters. RCW 90.48.030. RCW 90.48.037 empowers the department to bring enforcement actions, and RCW 90.48.080 prohibits discharge into the waters of the state of any pollutant "according to the determination of the department, as provided for in this chapter"; whereas RCW 90.48.120 sets forth a formal procedure whereby this "determination" is made:
Whenever, in the opinion of the department, any person shall violate or creates a substantial potential to violate the provisions of this chapter or chapter 90.56 RCW, or fails to control the polluting content of waste discharged or to be discharged into any waters of the state, the department shall notify such person of its determination by registered mail. Such determination shall not constitute an order or directive under RCW 43.21B.310. Within thirty days from the receipt of notice of such determination, such person shall file with the department a full report stating what steps have been and are being taken to control such waste or pollution or to otherwise comply with the determination of the department.
RCW 90.48.120(1).
Central to the accomplishment of the legislatively defined objectives is the creation of a regulatory scheme whereby the Department of Ecology is vested with the authority to permit the discharge of pollutants and to specifically approve the design of facilities which will do the polluting so as to allow industrial development while minimizing the harmful effects to those which are reasonably inevitable. See, e.g., RCW 90.48.110 ("[A]ll engineering reports, plans, and specifications for the construction of new sewerage systems, sewage treatment or disposal plants or systems ... and the proposed method of future operation and maintenance of said facility or facilities, shall be submitted to and be approved by the department, before construction thereof may begin."). The wastewater discharge permit is one of the principal measures designed to implement this policy. Miotke v. City of Spokane, 101 Wash.2d 307, 321, 678 P.2d 803 (1984).
The record in this proceeding demonstrates that Boise Cascade appropriately sought and obtained department review of its proposed treatment and disposal facility and, moreover, the department approved the facility in specific contemplation of a discharge of effluent into both the groundwater and Columbia River. For example, on March 30, 1979, the Department of Ecology (DOE) wrote Dennis Ross, the Environmental Control Director of Boise Cascade, an express letter of authorization, which I quote in part:
A review of the proposed construction and modification of the primary and secondary ponds indicate [sic ] that a design criteria [sic ] is necessary to determine the degree of sealing required.
We therefore require that both primary and secondary ponds be constructed or modified to achieve a leakage rate not exceeding 0.25 inches per day. This requirement may be satisfied by conventional sealing methods or by soil tests and analysis where applicable.
Ex. 219 (emphasis added).
This seepage into the groundwater was in addition to the DOE-permitted discharge into the Columbia River; however, by the literal language of Instruction No. 16, the jury would be forced to conclude that the discharge of "pollutants" at either location, even within the standard set by the department itself, would nonetheless constitute a "nuisance" for the purpose of imposing civil liability. Such, however, is clearly not the law as RCW 90.48.080 makes unlawful only the discharge of polluting matters into the waters of this state, "according to the determination of the department, as provided for in this chapter"critical language which was omitted from the instruction. This language is critical, and its omission was not harmless, because the department did not, in fact, make such a "determination" nor would it be expected to make such a determination unless it was proved that the treatment facility was constructed or operated inconsistent with department-approved design criteria in violation of the discharge permit. However, such fact, if it is a fact, was never proved to the department's satisfaction nor did the court require plaintiffs to prove it to the jury's satisfaction.

*893 Permitting Pollution
A second extremely prejudicial aspect of the instruction, also inherent in the decision of the trial court to omit critical language regarding department "determination," is the failure to inform the jury that one may discharge pollutants into the waters of the state at least insofar as they are permitted by a DOE permit. Although one may be civilly liable for violating the permit, Miotke, 101 Wash.2d at 322, 678 P.2d 803, "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance. RCW 7.48.160." Miotke, 101 Wash.2d at 331, 678 P.2d 803. But by the literal language of the instruction the jury was not so informed. Rather the jury was literally required to conclude Boise Cascade was operating a nuisance even if it operated in strict compliance with the regulatory scheme and its permit.
The error is particularly prejudicial in this case because the subject National Pollution Discharge Elimination System Wastewater Discharge Permit specifically provides:
The permittee shall not allow leachate from solid waste material to enter state ground or surface waters without providing all known, available and reasonable treatment, nor allow such leachate to cause any adverse effect on state ground or surface waters.
Ex. 337 at 20. It is apparent from the literal language of the permit that leachate is permitted to enter the ground or surface water provided it is first treated by "all known, available and reasonable treatment...." Further, the prohibition upon leachate entering the waters of the state is not absolute but only to the extent it would "cause any adverse effect on state ground or surface waters." Notwithstanding, Instruction No. 16, the nuisance per se instruction, not only allows but compels the jury to conclude that Boise Cascade was operating a nuisance even if it had used "all known, available and reasonable treatment" for its effluent and even if leachate release did not cause "any adverse effect on state ground or surface waters," i.e., it was obliged to find a nuisance per se even if Boise Cascade was discharging that effluent which the department lawfully permitted it to discharge.

Standard of Review
We have often held it is reversible error for the trial court to mislead the jury in its statement of the law through improvident jury instructions,[2] as we have held it is equally reversible error for the trial court to refuse a factually supported and accurate charge of the law to the jury where said instruction is a necessary predicate for the argument of a party's case.[3]
Applying such criteria to the instructions before us, I find reversible and prejudicial error which the majority has failed to recognize and the concurrence has refused to correct. Were the law of this case, as encapsulated by Instruction Nos. 7 and 16, to be applied generally throughout the industry, I think we would find continued maintenance of industrialized society all but impossible. If that be the appropriate step, it is for the Legislature to take it, not this court. I would therefore reverse and remand for a new trial based upon new instructions which accurately state the law.
NOTES
[1] March 3, 1994 Trial Transcript at p. 18-19.
[2] March 3, 1994 Trial Transcript at 18; March 4, 1994 Trial transcript at 12.
[3] See Map, Clerk's Papers at 1088.
[4] March 3, 1994 Trial transcript at 9-10.
[5] March 3, 1994 Trial Transcript at 128.
[6] March 3, 1994 Trial transcript at 9-10, 122; March 4, 1994 Trial Transcript at 8-9, Ex. 344.
[7] March 3, 1994 Trial Transcript at 155-157.
[8] February 3, 1994 Trial Transcript at 7.
[9] March 3, 1994 Trial Transcript at 153-154.
[10] February 4, 1994 Trial Transcript at 17-18; February 3, 1994 Trial Transcript at 81-82.
[11] February 3, 1994 Trial Transcript, p. 46; Ex. 23, March 3, 1988 Farm Lease between Donald R. Watts and James Smith.
[12] February 4, 1994 Trial Transcript at 58-59; February 23, 1994 Trial Transcript at 71-83.
[13] February 23, 1994 Trial Transcript at 37.
[14] February 3, 1994 Trial Transcript at 47-48.
[15] Contract for Deed, Ex. 2.
[16] February 3, 1994 Trial Transcript at 65.
[17] March 9, 1994 Trial Transcript at 123-25.
[18] February 8, 1994 Trial Transcript at 17-18; February 14, 1994 Trial Transcript at 78.
[19] February 3, 1994 Trial Transcript at 81-82; March 9, 1994 Trial Transcript at 158-163.
[20] Farm Lease, App. C, Pet. for Review.
[21] Ex. 23, March 3, 1988 farm lease between Donald R. Watts and James Smith.
[22] February 15, 1994 Trial Transcript at 44.
[23] February 15, 1994 Trial Transcript at 47-48; February 16, 1994 Trial transcript at 81-84.
[24] February 16, 1994 Trial Transcript at 71-73.
[25] February 16, 1994 Trial Transcript at 128.
[26] February 15, 1994 Trial Transcript at 157-58.
[27] February 16, 1994 Trial Transcript at 170-73.
[28] February 18, 1994 Trial Transcript at p. 32
[29] February 22, 1994 Trial Transcript at 75-76.
[30] March 3, 1994 Trial Transcript at 154, 181.
[31] Ex. 2 at 10 and Ex. 16.
[32] Clerk's Papers at 1108.
[33] Clerk's Papers at 1109.
[34] Clerk's Papers at 1110.
[35] Clerk's Papers at 1110-12.
[36] Ex. 176.
[37] Court of Appeals, Division III Br. of Appellants Donald R. Watts, d/b/a Don Watts Farms; and Boise Cascade Corporation at 11.
[38] Ex. 177.
[39] Clerk's Papers at 1096-101.
[40] Instructions of the Court, Clerk's Papers at 116.
[41] Jury Instructions, Clerk's Papers at 118.
[42] Jury Instructions, Clerk's Papers at 117.
[43] Special Verdict Form, Clerk's Papers at 99-101.
[44] Judgment on the Verdict, Clerk's Papers at 94-98.
[45] Tiegs v. Boise Cascade Corp., 83 Wash.App. 411, 922 P.2d 115 (1996).
[46] Hardin v. Olympic Portland Cement Co., 89 Wash. 320, 154 P. 450 (1916); State ex rel. Bradford v. Stubblefield, 36 Wash.2d 664, 220 P.2d 305, 17 A.L.R.2d 1258 (1950); Jones v. Rumford, 64 Wash.2d 559, 392 P.2d 808 (1964).
[47] Id. Grant v. Rosenburg, 112 Wash. 361, 192 P. 889 (1920); See State ex rel. Bradford v. Stubblefield, 36 Wash.2d 664, 220 P.2d 305 (1950);
[48] Jones v. Rumford, 64 Wash.2d 559, 392 P.2d 808 (1964).
[49] Crawford v. Central Steam Laundry, 78 Wash. 355, 139 P. 56 (1914).
[50] Mathewson v. Primeau, 64 Wash.2d 929, 395 P.2d 183 (1964); Powell v. Superior Portland Cement, Inc., 15 Wash.2d 14, 129 P.2d 536 (1942); Bartel v. Ridgefield Lumber Co., 131 Wash. 183, 229 P. 306, 37 A.L.R. 683 (1924); Jones v. Rumford, 64 Wash.2d 559, 392 P.2d 808 (1964); Hardin v. Olympic Portland Cement Co., 89 Wash. 320, 154 P. 450 (1916).
[51] RCW 7.48.
[52] Ellison v. Rayonier, Inc., 156 F.Supp. 214 (W.D.Wash.1957); Bales v. City of Tacoma, 172 Wash. 494, 20 P.2d 860 (1933); Bowman v. Helser, 143 Wash. 397, 255 P. 146 (1927); Sund v. Keating, 43 Wash.2d 36, 259 P.2d 1113 (1953).
[53] Id.; see Miotke v. City of Spokane, 101 Wash.2d 307, 330, 678 P.2d 803 (1984).
[54] Miotke v. City of Spokane, 101 Wash.2d 307, 678 P.2d 803 (1984).
[55] Id.
[56] Id.
[57] Bruskland v. Oak Theater, Inc., 42 Wash.2d 346, 254 P.2d 1035 (1953).
[58] Ingersoll v. Rousseau, 35 Wash. 92, 76 P. 513 (1904). Actually, counsel for Boise Cascade in oral argument conceded it was not relying upon the "permit shield" defense.
[59] Bruskland, 42 Wash.2d at 346, 254 P.2d 1035.
[60] Weller v. Snoqualmie Falls Lumber Co., 155 Wash. 526, 285 P. 446 (1930), overruled on other grounds by Bradley v. American Smelting & Ref. Co., 104 Wash.2d 677, 709 P.2d 782 (1985).
[61] Riblet v. Spokane-Portland Cement Co., 45 Wash.2d 346, 274 P.2d 574 (1954).
[62] 1 Washington State Bar Ass'n, Real Property Deskbook 9.21, at 9-23 (2d ed.1986).
[63] Id.
[64] Golden v. Mount, 32 Wash.2d 653, 203 P.2d 667 (1949).
[65] Id.; See Washington Hydroculture, Inc. v. Payne, 96 Wash.2d 322, 635 P.2d 138 (1981).
[66] Zinn v. Knopes, 111 Wash. 606, 191 P. 822 (1920) (lessor is estopped from canceling lease when lessee acted on faith of lessor and did acts called for by the lease); See 1 Washington State Bar Ass'n, Real Property Deskbook 9.21, at 9-23 (2d ed.1986) (citing Franklin v. Fischer, 34 Wash.2d 342, 208 P.2d 902 (1949)); Mobley v. Harkins, 14 Wash.2d 276, 128 P.2d 289, 143 A.L.R. 88 (1942) (acts giving rise to estoppel or part performance would not have been done but for the lease).
[67] Browder v. Phinney, 37 Wash. 70, 79 P. 598 (1905) (Plaintiffs must prove they took possession in order to establish part performance); see Omak Realty Inv. Co. v. Dewey, 129 Wash. 385, 225 P. 236 (1924) (a lease is enforced if the lessee possess the premises and paid rent).
[68] Central Bld'g Co. v. Keystone Shares Corp., 185 Wash. 645, 56 P.2d 697 (1936); Jones v. McQuesten, 172 Wash. 480, 20 P.2d 838 (1933); Garbrick v. Franz, 13 Wash.2d 427, 125 P.2d 295 (1942).
[69] February 3, 1994 Trial Transcript at 64-65.
[70] February 3, 1994 Trial Transcript at 110-11.
[71] 25 Wash. 73, 64 P. 914 (1901).
[72] Larsen v. Walton Plywood Co., 65 Wash.2d 1, 390 P.2d 677 (1964); See Farm Crop Energy, Inc. v. Old Nat'l Bank, 109 Wash.2d 923, 750 P.2d 231 (1988).
[73] Id.; see Federal Iron & Brass Bed Co. v. Hock, 42 Wash. 668, 85 P. 418 (1906).
[74] Id.; see Dunseath v. Hallauer, 41 Wash.2d 895, 253 P.2d 408 (1953); Gaasland Co. v. Hyak Lumber & Millwork, Inc., 42 Wash.2d 705, 257 P.2d 784 (1953).
[75] Id.; see Bromley v. Heffeman Engine Works, 108 Wash. 31, 182 P. 929 (1919); National Sch. Studios, Inc. v. Superior Sch. Photo Serv., Inc., 40 Wash.2d 263, 242 P.2d 756 (1952).
[76] Id.; see B & B Farms v. Matlock's Fruit Farms, Inc., 73 Wash.2d 146, 437 P.2d 178 (1968); Reefer Queen Co. v. Marine Constr. & Design Co., 73 Wash.2d 774, 440 P.2d 448 (1968); Lundgren v. Whitney's Inc., 94 Wash.2d 91, 614 P.2d 1272 (1980); Farm Crop Energy, Inc. v. Old Nat'l Bank, 109 Wash.2d 923, 750 P.2d 231 (1988); Lewis River Golf, Inc. v. O.M. Scott & Sons, 120 Wash.2d 712, 845 P.2d 987 (1993).
[77] Layman v. Swanson, 3 Wash.2d 370, 101 P.2d 304 (1940).
[78] Goldengate Hop Ranch, Inc. v. Velsicol Chem. Corp., 66 Wash.2d 469, 403 P.2d 351 (1965).
[79] Larsen, 65 Wash.2d at 16, 390 P.2d 677.
[1] The permit shield defense is a creature of federal statute applicable in citizen enforcement actions based on the federal Clean Water Act. See Daniel Riesel, Citizen Suits and the Award of Attorneys' Fees in Environmental Litigation, C921 ALI-ABA 1073, June 20, 1994, noting:

[s]imply stated, the permit shield defense states that if a party is in compliance with its NPDES or state-delegated program permit, it is deemed for purposes of the citizen suit and enforcement provisions to be in compliance with critical sections of the Clean Water Act.
Id. at 1121 (citing CWA § 402(k), 33 U.S.C. § 1342(k)). See also Atlantic States Legal Found., Inc. v. Eastman Kodak Co., 12 F.3d 353, 357 (2d Cir. 1993), as amended (Feb. 03, 1994), cert. denied, 513 U.S. 811, 115 S.Ct. 62, 130 L.Ed.2d 19 (1994), applying broadly the "shield provision" of the Clean Water Act, 33 U.S.C. § 1342(k) and holding "[o]nce within the NPDES or SPDES scheme ... polluters may discharge pollutants not specifically listed in their permits so long as they comply with the appropriate reporting requirements and abide by any new limitations when imposed on such pollutants." Id. at 357.
The Washington water pollution control act, RCW Chapter 90.48, contains no equivalent permit shield provision.
[2] The Court of Appeals here stated:

We agree with Boise that specific conduct which is approved and authorized by the agency charged with enforcing the act in question does not constitute a nuisance per se. Miotke and Branch [v. Western Petroleum, 657 P.2d 267 (1982)] both involved illegal activity. Nevertheless, Boise did not present any evidence that DOE approved the amount of seepage that occurred here.
Tiegs v. Boise Cascade Corp., 83 Wash.App. 411, 419, 922 P.2d 115 (1996) (emphasis added). The majority correctly declined to find that an agency's involvement absolved a polluter from liability for nuisance. Majority op. at 886.
[1] See, e.g., Carnation Co. v. Hill, 115 Wash.2d 184, 796 P.2d 416 (1990) (Jury is presumed to follow curative instruction.).
[2] See, e.g., Hue v. Farmboy Spray Co., 127 Wash.2d 67, 92, 896 P.2d 682 (1995) ("On appeal, errors of law in jury instructions are reviewed de novo, and an instruction's erroneous statement of the applicable law is reversible error where it prejudices a party.").
[3] See, e.g., State v. Griffin, 100 Wash.2d 417, 420, 670 P.2d 265 (1983); State v. Birdwell, 6 Wash. App. 284, 297, 492 P.2d 249 ("[G]iving an instruction on a party's theory of the case is required provided there is evidence to support it,... and the failure to do so, or the giving of otherwise incomplete instructions, constitutes reversible error."), cert. denied, 409 U.S. 973, 93 S.Ct. 346, 34 L.Ed.2d 237 (1972).